In re the MARRIAGE OF Becky
L. CAMPBELL and Herbert
C. Campbell.

Becky L. CAMPBELL, Petitioner–
Appellant,

v.

Herbert C. CAMPBELL, Respondent–
Respondent.

No. 18367.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 30, 1993.

Kenneth W. Johnson, Twibell, Greene · & Johnson, Springfield, for petitioner-appellant.

Michael D. Garrett, Garrett & Woods, Monett, for respondent-respondent.

GARRISON, Judge.

This appeal is from that portion of a dissolution of marriage decree which awarded primary custody of two minor children to the husband. Becky L. Campbell (Wife) and Herbert C. Campbell (Husband) were married in December 1981. At that time, Wife had a son (Joseph) from a prior marriage who was later adopted by Husband. Two children were born of this marriage: Brandi,

born January 31, 1984, and Candice, born August 27, 1990. The parties separated as husband and wife in June 1991, at which time Wife filed a petition for dissolution of marriage. At the time of trial, Joseph was seventeen years old, Brandi was eight, and Candice was one year, eleven months.

Pursuant to a mutual request by the parties, the trial court appointed an attorney as guardian ad litem of the minor children (hereafter referred to as Guardian). The Guardian filed a request for production of documents and information from both parties and interviewed Husband as well as Brandi prior to trial. He participated at trial by cross-examining witnesses and voicing his position on objections to evidence. Pursuant to the request of the trial court, he also submitted a proposed joint custody plan and a letter containing recommendations concerning custody.

The trial court awarded custody of Joseph to Wife with visitation privileges in Husband. No appeal is taken from that portion of the decree. Joint legal custody of Brandi and Candice was awarded to the parties but primary physical custody was awarded to Husband with visitation privileges in Wife. Wife appeals from that portion of the decree.

Wife raises two issues which may be summarized as follows: (1) the trial court erred in awarding primary physical custody of Brandi and Candice to Husband because there was no evidence in the record that the Guardian fulfilled his duty in representing the children; and (2) the award of primary physical custody of the two children to Husband was against the weight of the evidence, an abuse of discretion, and contrary to the children's best interests. For the reasons specified, we affirm the judgment of the trial court.

### STANDARD OF REVIEW

■ The standard of review in court-tried cases announced in *Murphy v. Carron*, 536

S.W.2d 30, 32 (Mo. banc 1976), applies to child custody cases. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Therefore, the decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

■ It is important to remember that the trial court has considerable discretion in making custody orders, and an appellate court should not disturb such orders unless it is firmly convinced that they are manifestly erroneous and the welfare of the children requires some other disposition. *Burden v. Burden*, 811 S.W.2d 818, 820 (Mo.App.1991); *In re Marriage of Mihalovich*, 659 S.W.2d 798, 801 (Mo.App.1983). In reviewing a decree, due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses, Rule 73.01(c)(2),[1] and to evaluate intangibles which do not appear from the cold record. *D.S.P. v. R.E.P.*, 800 S.W.2d 766, 770 (Mo.App.1990). A trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d at 654. The appellate court is to accept as true the evidence and inferences that are favorable to the trial court's decree and disregard all contrary evidence. *Id.* In a case, such as the instant case, where neither party requested findings of fact and conclusions of law, the appellate court must presume all fact issues to have been found in accordance with the judgment. *Id.*

### WIFE'S FIRST POINT

■ In her first point, Wife argues that awarding primary custody of Brandi and Candice to Husband was error because the trial court relied on the recommendations[2] of the Guardian without evidence in the record that the Guardian's duty to the children was fulfilled. In particular, she argues that the Guardian's failure to meet with Candice (who

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S., unless otherwise noted.

2. The Guardian recommended that primary physical custody be awarded to Husband and suggested specific visitation privileges. The trial court awarded primary physical custody to Husband but modified the provisions concerning specific visitation from that recommended.

at the time was one year, eleven months old) and to make a record of his meeting with Brandi and Husband constituted a gross neglect of duty requiring reversal.

Wife acknowledges that there was evidence which would support the award of primary custody to either her or Husband, but argues that *she* was prejudiced by the Guardian's alleged failures because a proper investigation *could* have revealed facts which *could* have changed the recommendations made to the trial court; and a complete record of the Guardian's findings and recommendations would have provided a basis for appellate review. She does not specify, however, what other facts could have been learned and does not contend, in her argument under this point, that the award of primary physical custody to Husband was contrary to the best interests of the children.

Point I must be denied for several reasons. First, Wife failed to preserve the issue for appellate review by not raising it in the trial court.[3] She made no objection concerning the appointment of the Guardian, his investigation, his participation or performance at trial, or the adequacy or effectiveness of his representation of the children's interests. Upon completion of the trial on July 20, 1992, the trial court asked the Guardian to submit a proposed joint custody plan, together with his recommendations concerning custody, by July 27. The trial court also requested, and counsel for both parties agreed, that any desired responses would be filed by July 29. The Guardian filed his recommendations and proposed custody plan on July 23 and Husband requested some modifications on July 28. Wife, however, made no objection or response. In short, Wife raised no issue in the trial court concerning the matters about which she now complains.[4] With commend-

able diligence, the trial court entered its decree on July 29.

A party is not entitled to have issues considered on appeal which were never presented to or passed on by the trial court. *Ibarra v. Missouri Poster & Sign Co.*, 838 S.W.2d 35, 40–41 (Mo.App.1992). Even though issues were not preserved in the trial court, an appellate court can review pursuant to Rule 84.13(c) to determine if plain error was committed affecting substantial rights which resulted in a manifest injustice or a miscarriage of justice. *D.D.C. by Juvenile Officer v. B.C.*, 817 S.W.2d 940, 944 (Mo.App. 1991). We have elected to review for plain error since the best interests of the children are involved.

Wife argues that the absence of a record of the Guardian's interview with Brandi requires reversal. She acknowledges that there are no statutory requirements that a guardian ad litem interview the children in all cases.[5] She relies, however, on *Cassinger v. Cassinger*, 808 S.W.2d 412 (Mo.App.1991). In the *Cassinger* case, this court reversed a custody decree because the trial court conducted an interview with a child who was not the subject of the proceeding (the husband's child by a former marriage) in chambers with counsel present but failed to make a record of it. Even though § 452.385[6] did not require reversal because the child interviewed was not the subject of the custody proceeding, this court reversed based upon the policy underlying that statute. In that case, it was held that orders pertaining to the custody of minor children must be based on evidence in the record, because otherwise the court must speculate as to what reliance, if any, the trial court placed on the interview in reaching its custodial decisions concerning the other children. In reaching its decision, this court

---

3. Wife's attorney on this appeal did not represent her in the trial court.

4. Section 452.375.7, RSMo Cum.Supp.1988, permits either of the parties to suggest a plan concerning joint custody.

5. Section 452.423, RSMo Cum.Supp.1988, which authorizes the appointment of a guardian ad litem in contested custody cases, provides that "[i]f appropriate, the child should be interviewed."

6. Section 452.385 provides:

The court may interview the child in chambers to ascertain the child's wishes as to his custodian and relevant matters within his knowledge. The court shall permit counsel to be present at the interview and to participate therein. The court shall cause a record of the interview to be made and to be made part of the record in the case.

relied heavily on *Williams v. Cole,* 590 S.W.2d 908 (Mo. banc 1979), in which the importance of a record of interviews conducted by the trial court was explained as follows:

> First, any consideration given by the trial court to the child's unrecorded testimony would be improper as not being supported by the record. Second, the failure to preserve the child's testimony precludes meaningful review with respect to what extent, if any, the trial court relied upon the child's testimony in determining [custody].

590 S.W.2d at 911.

We believe the instant case is distinguishable from the *Cassinger* case and the rationale supporting it as announced in *Williams.* In the instant case, it was the Guardian, not the court, who conducted an interview with Brandi. It was the court, not the guardian ad litem, who was charged with the responsibility of making custody decisions. There is no evidence in this case that the trial court abrogated its responsibility or delegated it to the Guardian. Likewise, there is no indication that the trial court had before it any evidence which was outside the record. As admitted by Wife in her brief, the Guardian's letter of recommendations to the trial court contained nothing which was outside the evidence introduced at trial.

■ Wife also argues that the Guardian had a duty to, but did not, investigate and advocate vigorously in behalf of the children. She cites *Hemphill v. Hemphill,* 316 S.W.2d 582 (Mo.1958), in support. In that case, the ward filed suit to set aside a divorce decree entered when she was represented by a guardian ad litem. She alleged that the guardian failed to communicate with her, failed to make any investigation whatsoever concerning the facts or circumstances of the case, failed to notify her of the trial, and permitted the matter to be heard while not acting in her best interests. The appellate court acknowledged the responsibility of a guardian ad litem; held that if the allegations of the petition were true, it would state a claim for relief; and reversed the order dismissing the petition.

In the instant case, the Guardian conducted discovery, interviewed the older child, actively participated in the trial, and offered recommendations to the trial court. This was in keeping with the Guardian's responsibility as described in *In Interest of J.L.H.,* 647 S.W.2d 852, 860–61 (Mo.App.1983). Failure to interview Candice, who was then less than two years old, does not require the conclusion that the Guardian was remiss in his duties. This is especially true since the undisputed evidence was that Candice was clean, healthy and well cared for physically.

The trial court had authority, pursuant to § 452.423.3, RSMo Cum.Supp.1988, to discharge the Guardian for failure to faithfully perform his duties, but Wife did not make that request. Our review of the record does not lead us to conclude that the Guardian's performance was a matter of plain error resulting in a manifest injustice or miscarriage of justice.

■ In denying this point, we also note that Wife alleges prejudice to her as a result of the conduct of the Guardian but does not argue that the Guardian's performance adversely affected the best interests of the children so as to require a different decision. As noted in *Van Pelt v. Van Pelt,* 824 S.W.2d 135, 139 (Mo.App.1992), the duty of the guardian is to protect the best interests of the child and not those of the parent, and even non-appointment of a guardian will not result in a reversal where it is only alleged that the parent's interests, as opposed to those of the child, are harmed.

Wife's first point is, therefore, denied.

## WIFE'S SECOND POINT

■ In her second point, Wife urges that the trial court erred in awarding primary physical custody of Brandi and Candice to Husband because it was against the weight of the evidence, an abuse of discretion, and not in the children's best interests. She argues that the evidence, some of which was not in the record,[7] showed she was the ap-

7. Wife does not state what evidence was outside the record, but we presume she refers to the

details of the Guardian's interview of Brandi and Husband.

propriate party to have primary physical custody.

 Wife acknowledges the heavy burden she carries in attempting to overturn a child custody order on the basis that it is against the weight of the evidence. An appellate court should exercise the power to set aside a decree or judgment on that basis with caution and with a firm belief that the decree or judgment is wrong. *Murphy v. Carron,* 536 S.W.2d at 32. In the instant case, Wife candidly admits in her brief that "there was evidence presented at the hearing that supported primary custody with either the mother or father."

The evidence indicated that both Wife and Husband were employed. Wife worked as a drill press operator during the day. Husband did not have full-time outside employment, but was a substitute mail carrier awaiting full-time employment upon the retirement of another carrier. He also worked on the family farm.

Husband had actively participated in caring for both of the children. For several months prior to trial, he had been the principal custodian of Brandi, who stayed with him during the week and with Wife on Saturdays. On days when he was not working as a mail carrier, he also kept Candice from early morning until late afternoon or evening. On days when he was working, Candice stayed with a baby-sitter.

Wife admitted that Husband took good care of the girls, they were always clean and neatly dressed, and they appeared to be in good health. She also believed that Husband loved his daughters and had been a "good father" to them. Other witnesses confirmed Husband's good relationship with his daughters.

Wife argues that Husband had an altercation with her son, Joseph, and had on one occasion been fired from a job for fighting. She points to this as showing a propensity for violence which would adversely affect the children. Neither of these incidents, however, involved the two children who are the subject of this appeal, and no allegations were made of such behavior while he was in the presence of either of them. In *Gilman v.*

*Gilman,* 851 S.W.2d 15, 19 (Mo.App.1993), the court held that Wife's evidence of Husband's violent temper did not require a reversal of the trial court's custody determination where other evidence indicated the Husband's current state of well being and a strong relationship with the child.

There was also evidence that Wife was a good mother, kept the children clean and well groomed, and was an attentive and loving parent. Other evidence, however, indicated that prior to the separation, Wife went out frequently at nights, leaving the children with Husband and sometimes not returning until 3:00 to 5:00 a.m. After the separation, there were occasions when Wife would pick up her daughters from Husband after she had been drinking. This finally resulted in his refusal to let her take the children when she had consumed intoxicants. There was also evidence that Wife took Candice with her in a vehicle when both she and the driver were drinking.

 Evidence was introduced from which the trial court could have believed that Wife had sexual relationships with other men, both before and after the separation. In her brief, Wife contends that her "personal life should not have been an issue since it was shown not to be in any way detrimental to the children" and "[t]he Trial Court should not be a judge of the Appellant's personal life but should have found that the conduct was not detrimental to the children's welfare." The trial court is charged, however, with the responsibility of making custody decisions which are consistent with the best interests of the children. In doing so, the trial court may consider the conduct of a parent which may inspire by example. *R. v. R.,* 685 S.W.2d 598, 602 (Mo.App.1985). There, the court said:

> ... [A]dverse consideration of past or present inappropriate conduct of a parent is not limited to conduct that has in fact detrimentally affected the children. Such conduct is of importance, perhaps decisive, "when it is reasonably predictable that the moral environment will adversely affect the child." ... Past and present conduct may be a reliable guide to the priorities of a parent.

*Id.* Morals are a pertinent factor to be considered in determining the best interests

of the children in custody proceedings. *Hartig v. Hartig*, 738 S.W.2d 160, 161 (Mo.App. 1987).

Marital discord is rarely without some bilateral fault, however. Unfortunately, the trial court, as an outsider to that relationship, is called upon to make custody decisions concerning children who are innocent participants in the trauma existing in that family. In doing so, the trial court must be vested with broad discretion. *See In re Marriage of Mihalovich*, 659 S.W.2d at 801. From the record before us, we are unable to conclude that the trial court abused its discretion because we are not firmly convinced that the welfare of these children requires some other disposition.

■ We note that in the argument portion of her brief, Wife suggests that the trial court abrogated its judicial responsibility in favor of the Guardian's recommendations. She suggests that, in the instant case, the trial court delegated its responsibilities to the Guardian and merely accepted the Guardian's recommendations without a sufficient basis in the record. She concludes by arguing that there is no statutory authorization for the guardian ad litem to make recommendations concerning custody decisions. To the contrary, however, the court in *In Interest of J.L.H.*, 647 S.W.2d at 861, stated that "it is imperative that the guardian ad litem, investigate and have input on the perspective of the child's best interest and this be presented to the trial judge." In the instant case, the trial court's decree concerning custody, while similar in some respects to the Guardian's recommendations, did not adopt them verbatim. Rather, the trial court added some provisions concerning visitation and modified others. We find nothing in this record to indicate that the trial court delegated its responsibility. Its custody orders were fully supported by substantial evidence.

The judgment is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.