**In re MARRIAGE OF Gary Joseph SISK and Sherry Pauline Sisk.**

**Gary Joseph SISK, Petitioner–Respondent,**

v.

**Sherry Pauline SISK, Respondent–Appellant.**

**No. 20276.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 1, 1996.

Application for Transfer to Supreme Court Denied Nov. 25, 1996.

Shelly Madden, St. Louis, for respondent/appellant.

Kerry D. Douglas, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, for Guardian ad Litem.

Ralph W. Gilchrist, Bolivar, for petitioner/respondent.

PER CURIAM:

In its decree dissolving the marriage of Sherry Sisk ("Mother") and Gary Sisk ("Father"), the trial court awarded primary custody of their child to Father. On appeal, Mother contends (1) that the trial court's decision granting custody of the child to Father was against the weight of the evidence, (2) that the custody decision was entered in order to punish Mother, and (3) that the guardian ad litem ("GAL") failed to protect the best interests of the child. We affirm.

### FACTS

Mother and Father were married on August 19, 1989, and their child was born on February 12, 1991. The parties separated in July 1993, and Father filed a petition for dissolution shortly afterward. A hearing for temporary child custody was held on October 26, 1993, at which time Mother informed the court for the first time that she suspected Father of sexually abusing their child. Pursuant to the mandate of § 452.423.1,[1] a guardian ad litem was appointed by the court to protect the best interests of the child during the dissolution proceedings. Following the hearing, the court granted temporary custody to Mother and awarded Father designated periods of visitation.

The Division of Family Services (DFS) received a report of sexual abuse of the child in December 1993, and one month later, Father amended his dissolution petition to ask for custody. On February 1 and 2, 1994, DFS received two more reports of abuse, and following investigations of the allegations, which included a physical examination of the child, DFS concluded that no evidence existed to substantiate the child abuse charges.

On February 2, 1994, Mother took the child to Citizens Memorial Hospital because of "knife cuts" on the child's leg, and informed the physician that she suspected Father had caused them. Following an examination of the child, the physician concluded that the markings on the child's leg were "obviously only small scratches which looks [sic] like the child has actually just scratched his ankle." In his diagnosis, the physician noted that there was no clinical sign of child abuse, and concluded that there was "parenteral manipulation due to divorce proceeding."

Mother admitted the child to St. Luke's Hospital in St. Louis for assessment of possible sexual abuse on February 6, 1994, where he was confined for eight days. During that time he was under the care of Dr. McCallum, a psychiatrist, who indicated some concern that the child had been "inappropriately stimulated, but it is not clear whether the stimulation was a suggestion by the parents or real abuse." She concluded further that "[i]f any kind of custody is given, I think supervised visits with the other parent would be appropriate, and I would lean more towards supervised visits with the father, only because he is accused, but not because of any clear evidence that he has abused the child."

Following the child's discharge from the hospital, he attended outpatient play therapy sessions. During some of those sessions, the child disclosed to the play therapist that his Father hurt him, saying "Daddy hurts [child's] butt" and "Daddy hurts [child's] pee-pee." As a result of these disclosures, the therapist filed two separate reports of abuse to DFS, but DFS again concluded that no evidence existed to substantiate the allegations of abuse.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Following the trial in October and November 1994, the court ordered the child to remain in the temporary custody of Mother pending the final outcome of the case, and granted Father unsupervised visitation with the child. In December 1994, Mother failed to deliver the child to Father for visitation. Father claims that he has not seen his child since that time, nor does he know the whereabouts of Mother or his child. The judgment entered by the trial court on May 31, 1995, found that Father did not sexually abuse the child, awarded primary custody to Father and granted visitation rights to Mother. Mother appeals that judgment.

## STANDARD OF REVIEW

The trial court's decree of dissolution must be affirmed if it is supported by substantial evidence, it is not against the weight of the evidence, and it neither erroneously declares nor applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the record on appeal, "[w]e accept as true the evidence and inferences therefrom that are favorable to the trial court's decree and we disregard all contrary evidence." *Chapman v. Chapman*, 871 S.W.2d 123, 124 (Mo.App.E.D.1994).

"[A]n appellate court will not disturb a trial court's custody award unless it is manifestly erroneous and the welfare of the child requires some disposition other than that made by the trial court." *In re Marriage of V.A.E.*, 873 S.W.2d 262, 266 (Mo. App.S.D.1994). We afford greater deference to the trial court's decision in child custody determinations than in other cases. *Sinopole v. Sinopole*, 871 S.W.2d 46, 47–48 (Mo. App.E.D.1993).

This court must presume the trial court awarded custody in the child's best interests, due to the trial court's superior position in judging the credibility of the witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record. *Id.* at 48. The trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *In re Marriage of Campbell*, 868 S.W.2d 148, 150 (Mo. App.S.D.1993).

## POINT I

In her first point on appeal, Mother asserts that the trial court's judgment awarding custody of the child to Father was against the weight of the evidence and was an abuse of discretion.

Section 452.375.2 requires that custody decisions be made in accordance with the best interests of the child after considering all relevant factors, including eight which are specifically enumerated. The following are the required factors which are particularly relevant to this proceeding:

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

. . . .

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

. . . .

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

Mother argues that the allegations of sexual abuse against Father were supported by substantial evidence and, as a result, the trial court abused its discretion when it awarded him primary custody of the child.

At the trial, Mother called various witnesses in support of her contention that the child had been sexually abused by Father. For instance, she called her sister, her moth-

er, and her father to testify about behavior or verbalizations by the child which suggested sexual abuse. In addition, Dr. McCallum testified by deposition that, in her opinion, the child had received inappropriate sexual stimulation from Father, but she confirmed that a "Safe" examination was negative and admitted stating in her discharge summary that there was no clear evidence that Father abused the child. Mother also called a therapist who conducted play sessions with the child. The therapist testified that the child made statements suggesting sexual abuse, that she observed behavior consistent with abuse, and she recommended that Father not have unsupervised visitation.

Father denied abusing the child. He presented evidence that the child had said that Mother told him to say the things he was reporting, that the records relating to the child's confinement in St. Luke's indicated "no sexual acting out," and he presented expert testimony that the child had not been sexually abused.

After having the opportunity to observe the witnesses presented by Mother, the trial court found "that their testimony was unbelievable in numerous respects." Specifically, the trial court noted the following: Mother made no allegations of sexual abuse until October 26, 1993, which is significant considering the fact that Father did not see his child from July 23, 1993 (the date of separation) to October 28, 1993 [2] (his first visitation period following the temporary custody hearing); the physician at Citizens Memorial Hospital suggested that the allegations of abuse were a result of manipulation by Mother; DFS had investigated five separate reports of abuse concerning the child, finding each time that there was no evidence to substantiate them; the deposition of Dr. McCallum was not believable, considering the fact that she had previously concluded when the child was discharged that there was no clear evidence of abuse and she had not examined the child since his release; statements made by the child to his play therapist suggesting abuse "lost their significance as

they were made on two occasions immediately upon the child entering the room after being taken to such sessions by [Mother or the child's grandmother], leading this Court to believe they were the result of child manipulation or coaching"; the child's reaction to seeing his Father was not consistent with abuse; as reflected by hospital records, when Father asked the child who told him to make the allegations of abuse, the child responded, "Mama." In addition, it is significant that, even though the trial court is not bound by the recommendation of the GAL concerning custody, it was the GAL's recommendation that Father be given primary custody of the child.

As we said in *In re Marriage of Patroske,* 888 S.W.2d 374, 383 (Mo.App.S.D.1994):

We do not minimize the seriousness of the allegations of sexual abuse in this or any case and have thoroughly reviewed the record. Resolution of the conflicts in evidence on this subject hinged largely on credibility. The trial court, however, is in a far better position to evaluate the credibility of witnesses than an appellate court and the resolution of conflicting evidence concerning the relative fitness of parents for custody is left to the trial court with deference to be accorded its conclusions. *Sturma v. Sturma,* 674 S.W.2d 626, 627 (Mo.App.E.D.1984).

 "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re Marriage of V.A.E.,* 873 S.W.2d at 268. Following a thorough review of the record, we cannot say that the trial court abused its discretion when it granted custody of the child to Father. Point I is denied.

### POINT II

In her second point on appeal, Mother asserts that the trial court's judgment granting custody to Father was entered to punish her and, as a result, the trial court errone-

---

**2.** In its findings of fact, the court said that Father had no contact with the child between July 21, 1993 and October 28, *1994,* but the evidence indicates that date was actually October 28, *1993.*

ously applied the law. According to Mother, the trial court granted custody to Father to punish her for not complying with its visitation order, and for an outburst she made at the end of the trial.

The reference to the failure to comply with a visitation order apparently refers to her refusal to allow Father to have visitation with the child from June 14, 1994 until September 21, 1994. Mother testified that she initially took that action based on directives from a DFS employee in St. Louis because they were then investigating a hotline call, and later because of her continuing concerns for the child's safety. She does not develop the portion of her point concerning the outburst, but that apparently refers to threatening statements she made when the GAL announced her recommendations in the case.

■ It is true that "a custody award is not to be used as punishment of a parent, but must be based upon the best interests of the children." *In re Marriage of Miller,* 876 S.W.2d 289, 291 (Mo.App.S.D.1994); *see also Knoblauch v. Jones,* 613 S.W.2d 161, 165 (Mo.App.S.D.1981). Mother argues that "a review of the record will reveal no other rationale" but that the court's decision awarding custody to Father was to punish her. Our analysis under Point I *supra* is replete with reasons why the trial court granted custody to Father, none of which had anything to do with punishing Mother.

The trial court found the following:

The Court finds that [Mother], based on the record and demeanor in the Court room has been disobedient and defiant of this Court's orders and in open Court threatened the Guardian ad Litem which with her testimony leads this Court to find that [Mother] will not allow [Father] significant and meaningful contact with the minor child.

Indeed, one of the factors considered by courts under § 452.375 in determining the best interests of the child is "[w]hich parent is more likely to allow the child frequent and meaningful contact with the other parent."

Mother has failed to show that the trial court's award of custody to Father was based on punishment of her instead of the best interests of the child. Point II is denied.

## POINT III

In her third and final point on appeal, Mother claims that the GAL failed to perform her statutory duties and failed to protect the best interests of the child because she did not conduct all necessary interviews with persons having contact with or knowledge of the child. Specifically, Mother argues that the GAL did not interview the child nor did she interview all necessary persons having contact with the child.

According to § 452.423.2, the guardian ad litem shall:

(1) Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed[.]

■ At the time of trial, the child was three years old. Bearing in mind that the above statute pronounces that the child should be interviewed "if appropriate," we are unable to conclude that the GAL was remiss for failing to do so here. This is especially true considering the many interviews of the child by physicians, therapists, and social workers, the results of which were presented to the trial court.

The trial court noted these circumstances and found that "[d]ue to the extremely young age of the child, failure to interview the child can hardly be deemed a failure on the part of the Guardian ad Litem." Such a finding was not a misapplication of law. *See In re Marriage of Campbell,* 868 S.W.2d at 152 (failure to interview a girl not yet two years old "does not require the conclusion that the Guardian was remiss in his duties").

■ Mother also argues that the GAL did not act in the best interests of the child because she failed to conduct all necessary interviews with persons having contact with or knowledge of the child.

The role of the guardian ad litem involves more than perfunctory and shadowy duties. The guardian ad litem is supposed to collect testimony, summon witnesses and jealously guard the rights of infants, which is the standard of duty in this state. It is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if his judgment were mature and he was not of tender years.

*In Interest of J.L.H.*, 647 S.W.2d 852, 861 (Mo.App.W.D.1983) (citations omitted). In addition, "it is imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest and this be presented to the trial judge." *In re Marriage of Campbell*, 868 S.W.2d at 154 (quoting *In Interest of J.L.H.*, 647 S.W.2d at 861).

With regard to this allegation, the trial court specifically found that "[t]here was no evidence that the Guardian ad Litem failed to investigate this case other than she reached a different result other than the one [Mother] desired." At trial, the GAL testified at length regarding the steps she took to investigate the allegations of sexual abuse. She interviewed both of the child's play therapists, the psychiatrist who evaluated the child at St. Luke's Hospital, as well as a social worker at the same hospital. She reviewed the child's medical records, participated in the deposition of the psychiatrist who evaluated the child, and reviewed an evaluation of the child conducted by another psychologist. The GAL also interviewed Mother and Father, took an active role in the trial, and made recommendations to the court at the end of the trial.

When interviewed by the GAL, Mother provided her with a list of allegations of sexual abuse. The GAL admits that she did not interview the individuals on the list (specifically, Mother's mother, father, and sister) "because she assumed that the list given to her by Mrs. Sisk consisted of all of the allegations that these individuals knew about." At no time was the GAL informed by Mother that the individuals provided by her knew more than what was contained in the list.

From our review of the record, it is obvious that the GAL's extensive participation in the proceedings was consistent with her statutory duties in safeguarding the best interests of the child. We offer no opinion on whether the GAL should have taken a more active role in interviewing the persons on the list provided her, or if it was prudent for her to assume that their testimony would offer no more than what was provided on the list. We do, however, recognize that "[i]f a guardian ad litem is to err, it should be on the side of investigating too much rather than too little." *Hemphill v. Quigg*, 355 S.W.2d 57, 64 (Mo.1962).

At the same time, however, it must also be recognized that "[t]he trial court is not bound by and may accept, modify or reject the guardian's recommendations as it deems appropriate." *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 386 (Mo.App. E.D.1993). The GAL's function includes acting as an arm of the trial court in assuring that all of the requisite information bearing on the best interests of the child will be presented for consideration. *Id.* at 384. As the GAL points out in her brief here, "[Mother] does not point to any evidence, not investigated by the Guardian ad Litem, which was not ultimately presented to the trial court." The trial court found that the GAL did not fail to investigate the case. We are unable to conclude that the court erred in so finding. Point III is denied.

We find that the trial court's decision granting primary custody to Father was supported by substantial evidence and was not an abuse of discretion. Motions to dismiss the appeal filed by the GAL and Father, which were taken with the case, are denied.

The judgment is affirmed.