In the Interest of R.B., a Minor.
A.P., Appellant,

v.

R.A.B. and B.B., Respondents.

No. 22620.

Missouri Court of Appeals,
Southern District,
Division One.

April 28, 1999.

Mark D. Pfeiffer, of Sapp, Orr, Bley & Pfeiffer, P.C., Columbia, Missouri, Charles B. Cowherd, of Farrington & Curtis, Springfield, Missouri, for appellant.

M. Douglas Harpool, and Pennie R. Adams, of Daniel, Clampett, Powell & Cunningham, L.L.C., of Springfield, Missouri, for respondents.

JAMES K. PREWITT, Presiding Judge.

This is a guardianship proceeding in which Greene County Family Court Commissioner Scott Tinsley presided over the evidentiary proceedings and entered his findings, recommendations and order appointing guardians of the minor child. Thereafter, Judge Mountjoy entered judgment on October 6, 1998, adopting Commissioner Tinsley's findings and recommendations as the judgment of the circuit court. Appellant, A.P., contends that the guardianship order is against the weight of the evidence, is without substantial evidence to support it, and erroneously declares and applies the law.

R.B. was born November 23, 1990. His mother died in an automobile accident in January of 1992. The child's mother was married to A.B. at the time of her death, and R.B. continued to reside with A.B. after his mother's death. The maternal grandmother, A.P., filed an Application for Letters of Guardianship on November 14, 1994, and on that date, an ex parte order was issued awarding her temporary custody of R.B. Among A.P.'s contentions was that A.B. was not the father of R.B. Three days later, the presumed father, A.B., filed an Application for Letters of Guardianship. One month later, A.B.'s parents, R.A.B. and B.B., sought to intervene, requesting guardianship be awarded to A.B. or to them. They contended that A.B., the husband of the child's mother, was also the child's father. The request to intervene was granted.

Evidence was presented over several days from February, 1997, through September, 1997. The guardian ad litem filed his report and recommendations in October, 1997. On December 10, 1997, the Family Court Commissioner entered his findings, recommendations and order, appointing R.A.B. and B.B. as permanent guardians. The matter was appealed, but the appeal was dismissed for lack of a final judgment. On October 6, 1998, the circuit court judge issued his judgment adopting the Commissioner's findings. It is from that judgment that this appeal is taken.

Review in non-jury cases is governed by Rule 73.01(c). For interpretation of that rule, see *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990). Due regard is given to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01(c)(2). The appellate court views the "evidence and its permissible inferences in the light most favorable to the judgment, and [disregards] all contrary evidence and inferences." *Barrett v. Barrett*, 963 S.W.2d 454, 457 (Mo. App.1998).

█ A trial court has considerable discretion in making child custody orders. *In re Marriage of Campbell*, 868 S.W.2d 148, 150 (Mo.App.1993). An appellate court will not disturb custody orders "unless it is firmly convinced that they are manifestly erroneous and the welfare of the children requires some other disposition." *Id.*

For her first point, A.P. alleges that the trial court erred in awarding guardianship to the paternal grandparents because A.P. is the more suitable guardian for several listed reasons. Appellant expounds many reasons why the paternal grandparents are "grossly immoral." Additionally, A.P. lists many of the allegations against A.B. that supported the trial court's conclusion that he was unfit to serve as guardian, and stresses that he lives on his parents' property.

█ This Court finds that substantial evidence supports the trial court's ruling that R.A.B. and B.B. are better suited to be the guardians of the minor child. The evidence shows a considerable amount of animosity between the parties. A.P. appears especially angry and distrustful of the paternal grandparents. Many reasons A.P. gives to support her assertion that she is the most suitable guardian relate to matters that go to the weight of the evidence and credibility of the witnesses; matters in which great deference is given

to the trial court. Viewed in the light most favorable to the judgment, we note that R.A.B. and B.B. reside in a well kept and attractive home. The paternal grandparents are financially stable, the paternal grandmother does not work outside the home, and she is available to tend to R.B. when he is not in school. Additionally, Appellant blames the child's father for her daughter's death, claiming he tampered with the brakes of her daughter's car so as to cause the accident in which she was killed. No evidence has substantiated her claim.

A.P. has confronted A.B. with vulgar, verbal arguments in the presence of R.B. on several occasions. A.P. has told R.B. that another man is his father, that his paternal grandparents do not love him as much as she loves him, and that his deceased mother did not like the paternal grandparents. A.P. has verbally and physically confronted R.A.B. and B.B. at the time of exchange of R.B. for visitation, thus in the presence of R.B. Additionally, A.P. has exhibited extreme agitation because R.B. attended a Catholic church with his paternal grandparents and she has demonstrated hostility toward that church. As summarized by the trial court, A.P. has been openly critical of and hostile towards the paternal grandparents. Appellant has engaged in conduct that interfered with and denied visitation to the paternal grandparents.

The petition for guardianship filed by A.P. was supported by an attached affidavit of a sister of the child's father. The affidavit alleged that the child's father had a propensity for violence, drank alcohol to excess and used marijuana and cocaine, and alleged incidents of violence and abuse. At trial, the affiant did not completely recant her statements, but she did equivocate on several of the allegations, stating that she had felt rushed by A.P.'s attorney on the day she signed the affidavit. Her credibility was also questioned due to promises made to her by Appellant.

Shortly after A.P. obtained custody of R.B., allegations were made that R.B. had been sexually abused by A.B.. The trial court then ordered that R.B. have no contact with A.B.. No evidence was presented that the order was violated. R.A.B. and B.B. had supervised visitation with R.B. on alternate weekends and holidays. During the time the child's father resided in a guest house on the property of his parents, R.A.B. and B.B., he would stay in a motel on the weekends his son would visit. An investigation conducted by the Department of Family Services concluded that the sexual abuse allegation was unsubstantiated.

Our review of the entire record in this case leads us to the conclusion that the trial court did not abuse its discretion in awarding guardianship to the paternal grandparents. We will not disturb the judgment of the trial court in child custody determinations unless we are firmly convinced that it is manifestly erroneous. Point I is denied.

 Appellant's second point relates to a contempt order initially entered against A.B. for failure to comply with an order to submit to a paternity test. The order was later vacated. Appellant claims the trial court erred in refusing to sanction the child's father, as required by § 210.834, RSMo 1994.[1]

Appellant filed a Motion for a Paternity Test in the circuit court, and that motion was granted. The presumed father was ordered to submit to a paternity test, but failed to do so. After notice and hearing,

1. **210.834 Blood tests – experts defined. –**
 * * *
 3. If any party refuses to submit to blood tests ordered by the court ... such refusal shall constitute civil contempt of court and shall be admissible as evidence in the action. In addition, upon motion and reasonable notice to the party refusing to submit to blood tests, the court shall, except for good cause shown, enter an order striking the party's pleadings and rendering a judgment by default on the issues of the existence of the parent-and-child relationship.

an order of contempt was issued against him. In part, that order read:

NOW, THEREFORE, in consideration of the foregoing findings of fact, the court herewith ORDERS, ADJUDGES AND DECREES AS FOLLOWS:

1. [A.B.'s] refusal to submit to the paternity testing procedure, pursuant to the terms of this Court's April 2, 1996 Order, constitutes civil contempt of court by [him].

2. [A.B.'s] pleadings in this proceeding shall be and are, as of the date of this Order, stricken.

3. Judgment by default on the issue of the parent-and-child relationship between [him] and the subject minor, [R.B.] is herewith entered in accordance with the allegation of Petitioner [A.P.] that [A.B.] is not the natural father of said minor child.

4. For all purposes of this guardianship proceeding and as it relates to all parties herein, it is herewith declared that [A.B.] is not the natural and/or biological father of the aforesaid minor child, and no evidence shall be adduced herein to show or establish paternity of [him] with respect to said child.

Motions for reconsideration were filed, and the court subsequently vacated the above order.

■ Appellant's request for relief was in two counts. Count I sought the court's order appointing her guardian of the minor. Count II sought "an order of this Court declaring the nonexistence of the parent-child relationship between [A.B.] and [R.B.]." That count was voluntarily dismissed by Appellant on February 26, 1997. The paternity test was sought under § 210.834, RSMo 1994, a part of the Uniform Parentage Act. *See* §§ 210.817—.852, RSMo 1994. Absent a proceeding under the Uniform Parentage Act, a party

cannot invoke § 210.830's authority to require genetic tests. *State ex rel. Wade v. Frawley,* 966 S.W.2d 405, 406 (Mo.App. 1998). Appellant asserts Count II was a proper petition under that Act. Respondents claim it did not contain all the necessary allegations to invoke the Act.

■ Whether Count II did state a cause of action under the Uniform Parentage Act does not have to be decided now. Without a proceeding under the Uniform Parentage Act, there is no basis for the sanctions under § 210.834. There is no longer a proceeding under that Act in this appeal, as Appellant voluntarily dismissed Count II. Therefore, any relief under the Act is no longer available. Point II is denied.[2]

The judgment is affirmed.

CROW, J., and PARRISH, J., concur.

---

2. There are, of course, other provisions for "blood examinations," see Rule 60.01(a)(1), and sanctions for failure to do so, see Rule 61.01(a),(e). However, the provisions of these rules were not presented to the trial court, and are not urged upon us. Nevertheless, whether to impose sanctions under them is in the discretion of the trial court. *Luster v. Gastineau,* 916 S.W.2d 842, 844 (Mo.App. 1996).