### In re the MARRIAGE OF Jackie A. COCHRAN and Samuel E. Cochran.

### Jackie A. COCHRAN, Respondent,

### v.

### Samuel E. COCHRAN, Appellant.

### No. 17938.

Missouri Court of Appeals, Southern District, Division One.

Nov. 4, 1992.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for appellant.

Todd F. Thorn, West Plains, for respondent.

1. For brevity, we refer to Appellant as Sam and to Respondent as Jackie.

CROW, Presiding Judge.

By a decree filed November 26, 1991, the trial court dissolved the eleven-year marriage of Jackie A. Cochran and Samuel E. Cochran. Sam [1] appeals, asserting the trial court erred in (1) awarding Jackie a $15,040 lien on real estate set apart to him as his nonmarital property, and (2) denying his prayer for maintenance.

Because the trial court erroneously classified some nonmarital property as marital and some marital property as nonmarital, we reverse the decree in part and remand for redetermination of certain issues, spelled out *infra*.

We begin with the real estate.

In 1978—before the parties' 1980 marriage—Sam purchased a parcel of land referred to by the parties as an 18–acre tract. The price was $13,000. Sam testified, without contradiction by Jackie, that he paid $2,000 "down," leaving a "balance" of $11,-000. At the time of the transaction, Sam and Jackie were living together in a mobile home owned by Sam, situated on a three-acre tract owned by him.

In 1979, the parties moved the mobile home from the three-acre tract to the 18–acre tract and began residing there.

Jackie testified the 18–acre tract was "paid on" after the marriage. Specifically, she avowed some "hog money" was used for such purpose, but she did not indicate how much. Additionally, according to Jackie, the three-acre tract was sold and the proceeds were applied to the balance on the 18–acre tract.

Sam testified he sold the three-acre tract for $6,500, using all the proceeds to reduce the debt on the 18–acre tract. He added that he sold some hogs he owned individually for $1,500, applying those proceeds against the debt on the 18–acre tract. According to Sam, the 18–acre tract was paid off by 1982. He swore only $1,200 was paid on it "after the marriage from marital funds."

Improvements were placed on the 18–acre tract after the marriage. Three are listed in the ensuing three paragraphs.

The pole barn. Jackie testified it cost about $6,000; Sam testified it cost $4,700.

The metal shed. We find no testimony by Jackie about its cost.[2] Sam estimated it cost $600.

The storm cellar and gazebo. Jackie recalled the aggregate cost of these items was $3,000. As we comprehend her testimony, the gazebo was constructed atop the storm cellar. Sam avowed the storm cellar cost about $1,800. It is unclear whether he included the cost of the gazebo in that figure.

An appraiser, testifying as Jackie's witness, placed a combined fair market value of $8,566 on the pole barn, metal shed, and storm cellar and gazebo.

Jackie testified, and Sam conceded, that after the marriage the parties planted flowers and trees on the 18–acre tract and refenced part of it. Sam testified all the "marital improvements" on the 18–acre tract were "worth" $8,690.

Jackie identified other improvements to the 18–acre tract: installation of a well and pump costing $1,670, construction of one pond and enlargement of another. However, Sam testified these improvements were completed before the marriage.

Jackie's appraiser testified the 18–acre tract—excluding the pole barn, metal shed, and storm cellar and gazebo (and, inferably, also excluding the mobile home situated on the tract)—has a fair market value of $20,200.

Sam testified the value of the 18–acre tract without the "marital improvements" is $13,310. When he adds the $8,690 worth of marital improvements, the total value of the tract, he says, is $22,000.

■ During the marriage, the parties bought a two-acre tract that was "mostly timberland" for $4,000. After the separation, Sam cut and sold all the large timber. Jackie and Sam each valued this tract at $4,000. However, Jackie's appraiser valued it at $6,622, despite the absence of the timber.

■ The mobile home in which the parties lived before the separation is also involved in the equation. Jackie conceded Sam bought it before the marriage and "pretty well had it paid off" when the nuptials occurred. Sam swore the mobile home was fully paid for before the marriage. Both parties assigned the mobile home a present value of $4,500.

The decree awarded Sam sundry items of marital property. Included among them was the mobile home. As explained in the preceding paragraph, this asset is Sam's separate property, not marital property.

The decree declared, "The real estate is non-marital property." This declaration is obviously incorrect as to the two-acre tract which, as we have seen, was bought during the marriage.

The decree awarded Sam all the real estate. However, the trial court found Jackie had expended time and labor in improving the real estate. In an effort "to equitably divide the values of the marital personal property and to account for the increased value in the real estate due to the efforts of [Jackie]," the trial court awarded Jackie a lien on the real estate[3] in the amount of $15,040. The decree provided,

2. One of Jackie's exhibits (Exhibit 7) may have shown the cost; however, the exhibit has not been filed with us.

3. Curiously, the decree contains legal descriptions of three tracts. The decree designates the first two as "Tract #1" and "Tract #2," respectively. Tract #1 appears to contain some 88,200 square feet (2.02 acres). We infer Tract #1 is the two-acre tract. The description of the third tract, which appears on the final two pages of the decree, seems to include the land called for by the description of Tract #2, together with other, abutting, land. On remand, the parties may want to consider whether the decree should be clarified. They will have the benefit of the deeds which, although received in evidence at trial, have not been filed with us.

"[E]xecution is stayed for seven hundred and twenty four days from date of this judgment."

Sam's first point relied on avers the trial court erred in awarding Jackie a "money judgment" for $15,040 in that it "was based upon an erroneous property division." Sam correctly points out the erroneous classification of the mobile home as marital property and the erroneous classification of the two-acre tract as nonmarital property.

Sam also maintains the trial court "purported to distribute nonexistent property." This contention concerns an award to Sam (as marital property) of a tractor, bush hog, dirt plow, auger, disc, post driver and front end loader. Sam directs us to his testimony that he sold these items to pay medical bills. He asserts, "The award of this phantom property to Sam, coupled with the trial court's refusal to credit him with the medical expenses paid through its liquidation, is patently unfair."

■ The first flaw in the "phantom property" complaint is that the trial court was not compelled to believe Sam's testimony that the items had been sold. In this judge-tried case, credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of the testimony of any witness. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988).

■ The second flaw is that nothing in the record demonstrates the trial court failed to "credit" Sam with the medical expenses he allegedly paid with the sale proceeds. The trial court made no findings of fact or conclusions of law, none having been requested. The trial court assigned no values to any of the items disposed of in the decree, hence we cannot know what aggregate value the trial court placed on the assets awarded each party as marital property and nonmarital property. That being so, even if one assumes the trial court believed Sam sold the "phantom prop-

erty" and applied the proceeds to medical bills, the record does not compel a finding that the trial court failed to take this into account in the property division.

The "phantom property" argument is without merit.

■ Another of Sam's complaints about the division of property involves the following items awarded him as marital property: chain saw, work bench, bit sharpener and tool box with chest. Sam avers Jackie's interrogatory answers demonstrate these items were gifts from her to him, thus making them his non-marital property. Our examination of the interrogatory answers confirms this. According to those answers, the aggregate value of these items is $605.

Sam concedes a trial court may order one spouse to pay cash to the other in a dissolution proceeding to achieve a proper division of marital property without compelling liquidation of assets. However, argues Sam, requiring him to pay Jackie $15,040 within two years mandates liquidation of assets. He reminds us he was 51 years of age at time of trial and the evidence showed his only income is "social security disability benefits" of $644 monthly.

Sam asserts the trial court should have awarded Jackie the two-acre tract which her appraiser valued at $6,622, thereby reducing the cash differential. Sam refers us to the following passage from Jackie's testimony: "I feel like I should get the two acres of land plus half of the overall property." The existing decree, according to Sam, saddles him "with a piece of real property he cannot use and a money judgment he has no conceivable ability to satisfy."

Jackie acknowledges the trial court may have erroneously classified some property but, citing *In re Marriage of Garrett,* 654 S.W.2d 313, 316[1] (Mo.App.1983), she insists we should not reverse the decree when it is nonetheless fair. According to Jackie's calculations, the value of the "total property" awarded Sam exceeds the value

of the "total property" awarded her by almost $25,000. Furthermore, says Jackie, the trial court evidently took into account certain "abusive behavior" by Sam toward her. § 452.330.1(4), RSMo Cum.Supp.1990. Consequently, argues Jackie, we should affirm the decree.

Section 452.330.1 directs the trial court to first set apart to each spouse his nonmarital property, then divide the marital property. *Tubbs v. Tubbs,* 755 S.W.2d 423, 425 (Mo.App.1988).

Because the trial court erroneously set apart to Sam as his nonmarital property the two-acre tract (actually marital property), and erroneously awarded Sam as marital property the mobile home and gift items (actually nonmarital property), we hold those portions of the decree must be reversed, together with the $15,040 lien on the real estate, and the cause must be remanded.

On remand, the trial court shall set apart to Sam as his nonmarital property the mobile home and gift items. The trial court shall then consider what disposition to make of the two-acre tract, and after making that decision the trial court shall consider whether a cash award is necessary to achieve a proper division of marital property. In addressing the latter issue, the trial court may take into account the contentions of the parties in their respective briefs in this appeal. We do not suggest what decision the trial court should make, as we cannot forecast how the trial court will dispose of the two-acre tract or what value the trial court will assign it.

If the trial court makes a cash award in a lesser sum than $15,040, the trial court may also consider whether a two-year moratorium on collecting it is too long.

■ In leaving these decisions to the trial court, we do not ignore Sam's plea that we finally dispose of the case by entering the decree the trial court should have entered. Rule 84.14, Missouri Rules of Civil Procedure (1992). On the record here, lacking findings by the trial court as to the values of the assets disposed of by the decree, we are unable to fashion a decree. *Tubbs,* 755 S.W.2d at 425[3]; *In re Marriage of Null,* 608 S.W.2d 568, 571 (Mo.App.1980).

This brings us to Sam's second point which, as reported earlier, assigns error in the trial court's denial of Sam's prayer for maintenance. Sam avers he should have received maintenance because Jackie, age 37 at time of trial (14 years Sam's junior) is in good health, earns $30,000 per year, and has no dependents.

Jackie responds that Sam failed to satisfy the statutory requirements for maintenance in that the evidence failed to establish he (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and (2) is unable to support himself through appropriate employment. § 452.335.1, RSMo Cum.Supp.1990.

Because (a) one of the factors in determining eligibility for maintenance is the marital property apportioned to the spouse seeking maintenance, (b) we do not know what disposition the trial court will make of the two-acre tract on remand, and (c) we cannot forecast whether the trial court will grant Jackie a cash award from Sam as part of the marital property division, we are unable to declare Sam should, or should not, receive maintenance. Obviously, a cash award from him to Jackie as part of the division of marital property will reduce the aggregate value of marital property awarded him.

Because the maintenance issue is inextricably tied to the division of marital property, we reverse the denial of maintenance so the trial court may consider the maintenance issue after properly classifying and disposing of the misclassified items identified earlier. *Sturgis v. Sturgis,* 663 S.W.2d 375, 384[15] (Mo.App.1983); *Hauser v. Hauser,* 625 S.W.2d 924, 926[2] (Mo.App.1981).

In allowing the trial court to reconsider the maintenance issue we have not over-

looked Jackie's contention that one of the statutory factors to be considered is conduct of the parties (§ 452.335.2(9)), a factor which, according to Jackie, weighs heavily against Sam. Jackie asserts Sam's abusive conduct was a "primary cause" of the breakup, and awarding maintenance would reward him for his misdeeds. This contention raises issues of credibility which fall within the trial court's realm, not ours.

The decree of dissolution of marriage is affirmed except in the respects heretofore spelled out in this opinion. The decree is reversed as to those items alone, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

PARRISH, C.J., and SHRUM, J., concur.