In re the **MARRIAGE OF Virginia Carol IRIONS and John Thomas Irions.**

**Virginia Carol Irions, Petitioner–Appellant,**

v.

**John Thomas Irions, Respondent–Respondent.**

**No. 21966.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 1999.

King E. Sidwell, Blanton, Rice, Sidwell & Nickell, L.L.C., Sikeston, for Appellant.

Lawrence H. Rost, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Virginia Carol Irions ("Wife") appeals from the decree entered in her suit against John Thomas Irions ("Husband") for dissolution of their marriage. She contends that the trial court erred in its division of marital property and its failure to award her maintenance.

Wife and Husband had two emancipated children and had been married almost thirty years when this case was tried. Wife worked as a production line employee in a shoe factory, but at Husband's direction, she quit that job when their son was born and was not employed outside the home for the next fourteen years. As of the time of trial, Wife had been employed as a teacher's aide for eight years and was working 35 hours per week, earning $6.10 per hour.

Husband had been employed by Noranda Aluminum, Inc. ("Noranda") for 22 years, and at the time of trial was earning a gross income in excess of $3,174 per month from that employment.[1] He was also engaged in a farming operation with his brother which, according to an evaluation of Husband and Wife's income tax returns, provided them with a "net cash flow averaging in excess of

---

1. Husband testified at trial that he had received a raise and was earning "a little bit more" than $3,174 per month, but did not testify how much more.

$33,665 per year for the five (5) years" preceding the trial.[2]

This case was tried on July 13, 1995, and was taken under advisement. At that time, the trial court requested that the attorneys submit proposed decrees with suggestions within ten days, and said that it would render a decision "as quick as possible." Based on the record before us, it appears that nothing further occurred in this case until April 10, 1996 (almost nine months later), when the trial court entered an Interlocutory Order of Dissolution after being asked to do so by Husband's attorney because of problems arising from the unresolved dissolution. It was not until October 15, 1997, two years and three months after the trial, that the trial court entered a judgment in which the matters of property division and maintenance were decided.[3]

Our review is pursuant to Rule 73.01(c) as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Under this standard, considerable deference is accorded judgments turning on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App. S.D.1992). No such deference obtains, however, when the law has been erroneously declared or applied. *Id.* at 776.

■ Wife's first point relied on is:
The trial court erred in its division of marital property because RSMo.§ 452.330 requires the court to consider the economic circumstances of each spouse at the time the division of property becomes effective and the trial court did not apply this standard in that the property was valued as of the date of trial July 13, 1995 (except retirement account valued one (1) year pri-

or) and no order was entered or effective for division of property until two and one-fourth (2 1/4) years later on November 15, 1997.

In this case, the marital property included a marital home, a 35–acre farm,[4] a "Holiday Rambler Trailer," Husband's 401(k) plan, furniture, three vehicles, and a one-half interest in farm equipment. Apparently, the 35–acre farm was sold prior to the decree and the proceeds were divided between Wife and Husband with each receiving $10,000. The evidence indicated that in May 1995, two months prior to trial, Husband's 401(k) plan had a value of $55,000. At the time of trial (July 13, 1995), however, there was testimony that Husband had borrowed $25,000 from that plan in order to finish making a crop and purchase additional farming equipment. According to Husband, he was paying a total of $520 per month to repay the loan on the 401(k) plan.

Husband was also vested under two retirement plans provided by Noranda. The only evidence concerning the value of those plans was as of July 22, 1994, approximately one year prior to trial. At that time, one had a "present value" of $60,733.83 which would provide an "accrued monthly benefit" at age 65 of $1,035.65 per month, and the other had a "present value" of $3,704.01, with an "accrued monthly benefit" of $65.89. At the time of trial, Husband had worked a total of 22 years for Noranda, all of which was during the marriage. Benefits under the Noranda retirement plans were calculated by using the following formula: "1 ¾% of your 'Average Monthly Compensation', multiplied by your 'Benefit Service,' " from which is deducted ¾% of the employee's "estimated 'Social Security Benefit Amount.' " "Average Monthly Compensation" was defined as the "monthly average of your compensation, as reported on your W–2 form, for the last 4 full calendar years plus year-to-date to time of

---

**2.** A CPA testified that this figure represented the average net cash available from the farming operation without considering depreciation which was shown on the income tax returns.

**3.** The record contains no explanation for this delay which was both unusual and inordinately long.

**4.** Husband testified that although the 35–acre tract was titled jointly to Husband and Wife, a one-half interest in it actually belonged to his brother.

termination or retirement." "Benefit Service" was defined as an employee's full-time employment with the participating company after January 1, 1970, while not covered by another pension plan or collective bargaining agreement. While the record before us does not reflect the age of either of the parties, an employee under a Noranda retirement plan could retire at age 55 or at age 65. Under the "early retirement" option, benefits were calculated using the same formula as for normal retirement. The difference was that the benefits were calculated as of the early retirement date rather than the date of normal retirement.

■ The trial court awarded the following property to Wife which it valued as follows: the marital home ($60,000); Holiday Rambler Trailer ($7,500); Ford Explorer ($12,000); one-half of Husband's 401(k) ($20,000); furniture ($5,000); and one-half of the proceeds from the sale of the 35–acre tract ($10,000). The total valuation of this property was $114,500. In addition, Wife was awarded her retirement plan through her employment as a teacher's aide.[5]

The trial court valued and awarded the following property to Husband: one-half of the proceeds of the sale of the 35–acre tract ($10,000); one-half of the farm equipment ($49,000);[6] two 1994 pickup trucks (net value of $12,500); and the balance of his 401(k) plan after the payment of $20,000 to Wife (the court assumed that the balance awarded to Husband was worth $20,000). Husband was ordered to assume debts totaling $37,-400, resulting in a net valuation of the property awarded to him of $54,100. In addition, however, Husband was awarded all of his interest in the Noranda retirement plans, but no value was placed on them.

■ The general rule is that the date of valuation of marital property is the date of trial. *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987). Section 452.330.1(1), however, directs that the court shall divide the

marital property in such proportions as it deems just after considering several factors, including the economic circumstances of each spouse *at the time the division of property is to become effective.* In *In re Marriage of Gustin*, 861 S.W.2d 639 (Mo.App. W.D.1993), the court considered the interaction of these two principles in a case where the decree dividing the marital property was not entered until six months after the trial. In that case, the major marital asset was a large amount of stock which had fluctuated in value considerably during the two months prior to the conclusion of the trial, and the trial court, in distributing the property, relied on a valuation which was not the most recent one available. The Western District of this Court reversed and remanded the case for the trial court to receive additional evidence on the value of the marital property because the court had failed to consider the economic circumstances of the parties at the time the division was to become effective and had failed to value the property at the time of trial. *Id.* at 644. In doing so, the Court said:

> Valuation of property should be reasonably proximate to the date the division is to be effective. If the effective date of the distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible.

*Id.*

Husband argues that *Gustin* is distinguishable from this case because here the assets were not of the type to have ever-changing values. He points out that in *Gustin*, the court said, with reference to the need for a hearing to establish a valuation close to the effective date of the division, that "[t]his is especially important in a case such as this in which assets are subject to ever changing value." *Id.* In this case, however, many of the assets were subject to change with re-

---

5. Wife had a retirement plan through her employment with the Pemiscot County Special School District. There was no evidence about the extent of the benefits under that plan which Wife could expect in the future. Teacher retirement plans, however, are separate property and not subject to division in a dissolution. *Ludwin-*

*ski v. Ludwinski*, 970 S.W.2d 892, 894 (Mo.App. E.D.1998).

6. Husband testified that he and his brother each owned a one-half interest in the farm equipment.

spect to value. This is especially true with regard to Husband's 401(k) plan and his retirement plans. The possibility of such fluctuations was enhanced by the long delay between the reception of the evidence and the decree dividing the property. Furthermore, we do not consider *Gustin* to be limited in application to cases involving large amounts of publicly owned stocks. Such an interpretation would ignore the underlying principle of *Gustin* (i.e., the necessity of considering the economic circumstances of the parties at the time the division is to become effective).

In *Price v. Price,* 921 S.W.2d 668, 675–76 (Mo.App. W.D.1996), almost six months elapsed between the trial and the decree. The assets divided in the decree included the husband's personal savings plan which was funded with stock. The trial court's valuation of the plan was based on its value one year before trial, plus the monthly contributions made during that year, minus any loans taken out against the plan. On appeal, the husband argued that at the time of trial the plan's value was $2,020 less than that found by the trial court due to a decrease in the value of the stock. The court reversed the judgment and remanded the case for the taking of additional evidence with respect to the value of the plan.

In *Morgan v. Ackerman,* 964 S.W.2d 865, 868–69 (Mo.App. E.D.1998), the marital assets included real estate, automobiles, bank accounts, and shares of the husband's closely-held corporation. Two and one-half years elapsed between the taking of evidence and the decree dividing the property. The court reversed and remanded the case for additional evidence on the current value of the property and the "current economic circumstances of each spouse." *See also In re Marriage of Burns,* 903 S.W.2d 648, 652 (Mo.App. E.D.1995) (finding that it was error for the trial court, on remand, to order a division of marital property based on values which were sixteen months old, and holding that the trial court should have considered the economic circumstances of the parties at the time of the dissolution and distribution).

In the instant case, with the exception of Husband's retirement plans, the marital property was valued as of the time of trial which was two years and three months before it was ordered divided by the court. This property included Husband's 401(k) plan which then had a value of $55,000. While Husband testified, and the trial court obviously believed, that he borrowed $25,000 from that plan prior to trial to plant crops and buy equipment, there was no evidence of the value of that plan when the division was effective.

■ Included in the property awarded to Husband was his retirement plans. Non-disability retirement plans earned during marriage are marital property. *In re Marriage of Ward,* 955 S.W.2d 17, 20 (Mo.App. S.D.1997). Here, the evidence of value concerning Husband's retirement plans was as of one year prior to trial and indicated a "present value" of $64,437.84. By the time of the division, that valuation was three years and three months old.[7] There was evidence at trial that Husband had received a raise since that evaluation, a factor which affects the benefits to be received under the plans. The division was made, however, without the trial court having information about any other raises that may have been received in the two-plus years between trial and the division.

Here, the unexplained and unfortunate delay between the valuation of the marital property and the division of that property prevented a proper consideration of the economic circumstances of the parties at the time the division was effective. Even though this case does not involve assets of the magnitude as those in *Gustin,* we conclude that under the circumstances here, the principles of that case require that the portion of the judgment dividing the marital property be reversed and the cause remanded for the taking of additional evidence concerning the value of the property and the economic circumstances of the parties at the time the

7. There is no issue here, and we will not speculate about whether, under these circumstances, the interlocutory decree dissolving the marriage on April 10, 1996, may have had an effect on the portions of Husband's retirement plans which were marital property subject to division. *See In re Marriage of Ward,* 955 S.W.2d at 21.

division is to become effective. In reaching this decision, we are aware that it does not solve the difficulties created by the unnecessary delay in obtaining a decree in this case, a problem that could have been avoided by a prompt decision of the issues presented to the trial court.

 In her second point, Wife contends that the trial court erred in awarding a disproportionately large percentage of the marital property to Husband. She argues, based on the evidence, including financial statements signed by the parties and filings with the trial court, that Husband was unfairly awarded 66.34% of the marital property.

 Wife correctly points out that the division of marital property is not required to be equal, but must be fair and equitable after taking into account the factors enumerated in § 452.330.1. *Mistler v. Mistler*, 816 S.W.2d 241, 252 (Mo.App. S.D.1991). She also correctly states that such factors as the contribution of each spouse to the acquisition of the marital property (including contributions as a homemaker), the economic circumstances of the parties when the division is to be effective, and the conduct of the spouses during the marriage should be considered in determining the division of such property. Here, however, it would be a useless exercise to examine the division of marital property previously ordered by the trial court in light of our decision under Wife's first point. Because the cause is remanded for the taking of additional evidence which may result in a different division of marital property than that previously ordered, we do not reach point two.

 In her final point, Wife contends that the trial court erred in failing to award her maintenance. She argues that this was error because the evidence demonstrated that they had been married for nearly thirty years, she was a part-time teacher's aide earning $7,642 per year, Husband had total earnings of $78,-027 per year, she was unable to independently meet her needs, and Husband had engaged in extramarital affairs constituting marital misconduct.

Section 452.335 provides, in pertinent part:

1. In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment. . . .

If the court finds the existence of these threshold factors, the amount and duration of a maintenance order is to be determined in accordance with § 452.335.2 which requires the court to consider all relevant factors, including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . . ;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

In this case, the trial court declined to award maintenance to Wife, saying:

Having considered each factor set forth in RSMo. § 452.335, and specifically the disproportionate award to [Wife] of marital property, the Court finds that [Wife] has sufficient property to provide for her reasonable needs and further is able to sup-

port herself through appropriate employment. [Wife's] request for maintenance is therefore denied.

In referring to a "disproportionate award" of marital property to Wife, the trial court was apparently referring to an attachment to the judgment indicating that Wife received marital property with a net value of $114,500, while the net value of the marital property awarded to Husband was $54,100. The trial court, however, did not include the value of Husband's retirement plans in those calculations (a value of approximately $64,500 as of one year prior to trial). Additionally, Wife points out that the trial court ascribed no value to the crops and equipment into which Husband invested the $25,000 borrowed against his 401(k) plan.

The marital property apportioned to Wife two years and three months after the trial, and one and one-half years after the interlocutory decree dissolving the marriage, included no income-producing property other than $20,000 from Husband's 401(k) plan and $10,000 from the sale proceeds of the 35 acres. At the time of trial, the evidence indicated that Wife's monthly expenses were over $2,000; she had only a high school education; she had not worked for a period of fourteen years during the marriage (at the direction of Husband); and she earned a total of $7,642 the year prior to trial. Husband, on the other hand, earned $41,124 during the year prior to trial from his employment with Noranda. Furthermore, other evidence indicated that he also had an average net cash available from his farming operations of approximately $33,000 per year. Husband's income and expense statement filed with the trial court indicated monthly living expenses of $1,140.

Based on this evidence, the trial court's conclusions with regard to Wife that she was awarded a disproportionate amount of the marital property, that she had sufficient property to provide for her reasonable needs, and that she was able to support herself through appropriate employment are at best questionable. A spouse is not required to deplete the marital property apportioned to her before being entitled to mainte-

nance. *Zlatic v. Zlatic*, 910 S.W.2d 818, 821 (Mo.App. E.D.1995).

We are unable to consider and resolve the issue of the denial of maintenance to Wife, however. The division of marital property is inexorably connected with the issue of entitlement to maintenance by reason of § 452.335.1(1) which requires a finding that the spouse seeking maintenance lacks sufficient property, including marital property apportioned to that party, to meet his or her reasonable needs before an award of maintenance may be ordered. *In re Marriage of Cochran*, 840 S.W.2d 876, 880 (Mo. App. S.D.1992). We do not know what marital property may be apportioned to Wife upon remand, and therefore, cannot determine her entitlement to maintenance. *See Cochran*, 840 S.W.2d at 880; *In re Marriage of Johnson*, 856 S.W.2d 921, 927 (Mo.App. S.D.1993). The judgment is reversed to the extent that it denied maintenance to Wife and that issue shall be considered by the trial court on remand.

The portions of the judgment dividing marital property and denying maintenance to Wife are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. The judgment is otherwise affirmed.

SHRUM, P.J., and BARNEY, J., concur.