Teresa Lynn BUCKNER, Appellant,

v.

Joseph Ray BUCKNER, Respondent.

No. WD 49821.

Missouri Court of Appeals,
Western District.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 26, 1995.

Dana J. Macoubrie, Chillicothe, for respondent.

Allen S. Russell, Kansas City, for appellant.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

This is an appeal from a dissolution of marriage. The facts adduced at trial favorable to the judgment are as follows:

The parties to the dissolution, Joseph and Teresa, were married on July 30, 1980. Two children were born of the marriage; Jessica, born March 21, 1985, and Katlin, born January 17, 1991.

During the marriage, Joseph and Teresa and their children lived rent-free in a house on Joseph's parents' land, next door to their house. Teresa did not work outside the home during the marriage, but testified at trial that she had just completed a Modern Business program at an area vocational school.

Joseph worked as a farmer, farming his parents' land and his uncle's land. Joseph's parents owned 670 acres of farmland in Livingston County, and his uncle owned another 640 acres nearby. Joseph and Teresa owned 60 acres of farmland, purchased from Joseph's parents in 1991. Joseph had entered into several lease agreements to farm his uncle's land in the past, and Joseph testified that he had earned money from crops grown on his father's and uncle's land.

Financial problems seemed to plague Joseph and Teresa. They were in approximately $150,000 debt at the time of dissolution. The flood of 1993 had also affected some of their crops. Joseph did not continue the lease agreement to farm his uncle's land.

On July 1, 1993, Joseph's uncle and father, along with some other relatives, entered into a limited partnership agreement to manage the same farmland Joseph had previously farmed. Joseph's lease with his uncle expired, and he became a hired hand working for the partnership at a salary of $1,000 per month.

On July 26, 1993, Joseph and Teresa separated. When she left, Teresa took receipts and financial papers with her. At trial, Teresa testified that Joseph habitually prepared detailed written records of his financial position, and she introduced one as evidence of the amount and value of his crops. Teresa testified further that Joseph always handled their checkbook, and that when she took the

financial papers and receipts, she found evidence of several savings accounts which she never knew existed.

At trial, Joseph maintained that he earned only $1,000 a month. On cross-examination, Joseph was asked about his legal expenses of $12,500, his hired hand's monthly salary of $1,000, his maid's monthly salary of $320, and other expenditures which did not comport with a salary of $12,000 per year. The trial court found that Joseph's testimony "regarding his income, disposition of personal property, farming operation and financial situation ... [was] not ... credible."

The parties owned a great deal of personal property, farm equipment, and livestock. The parties had multiple appraisals of the marital property done, and the parties stipulated at trial that the marital property was valued as appraised.

In its judgment entry of July 19, 1994, the court dissolved the marriage, granted custody and maintenance, and divided the property. Joseph and Teresa were given joint physical and legal custody of the children. Teresa was allowed visitation for the majority of the time; Joseph was allowed visitation on every other weekend, two weeks in the summer, Father's Day, his birthday, and every other year for holidays. Temporary, non-modifiable maintenance for thirty-six months was awarded to Teresa.

Teresa was given approximately $15,000 worth of marital property, a $75,000 money judgment, and attorneys' fees. Joseph was given approximately $400,000 worth of marital property, the farm, and approximately $150,000 in debt.

Teresa appealed; Joseph's cross-appeal followed.

## I. Maintenance

Both parties appeal the thirty-six month award of temporary, non-modifiable maintenance. Teresa appeals the temporary nature of the award on the ground that the evidence proved that there was no reasonable probability that she would be in a position to be self-supporting at the end of the maintenance period. Joseph appeals the award on three

grounds: a) Teresa did not meet the criteria for receiving maintenance; b) he did not have the means to pay $500/month; and c) the trial court's order was internally inconsistent in that the court reversed its own order and terminated Joseph's maintenance obligations.

■ First, the standard of review:

This court must affirm the trial court's decision awarding maintenance unless no substantial evidence supports it, or it erroneously declares or applies the law. Further, we view the evidence as favorable to the decree, disregarding contrary evidence and deferring to the trial court even if the evidence could support a different conclusion. The trial court is granted wide discretion in awarding maintenance. *Whitworth v. Whitworth*, 878 S.W.2d 479, 483 (Mo App.1994) (citations omitted).

■ As to Teresa's argument, § 452.335, RSMo (1994) provides that "[t]he maintenance order shall be in such amounts and for such periods of time as the court deems just," § 452.335.2, and that "[t]he court may order maintenance which includes a termination date." § 452.335.3. At trial, Teresa requested maintenance for a period of three years. It was not an abuse of discretion for the court to award Teresa the maintenance she requested.

■ Joseph's first argument is that Teresa did not produce sufficient evidence to support the trial court's finding that Teresa (1) "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs," and (2) "[i]s unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." § 452.335.1, RSMo (1994). Thus, Joseph argues, it was an error to award any maintenance at all.

At trial, Teresa testified that she had no college education, had never worked outside the home, had no skills or training, and would not reasonably likely be employable in the future. The trial court did not abuse its discretion in awarding maintenance.

■ Joseph's second argument is that he did not have the ability to pay maintenance. Evidence at trial revealed bank accounts which Teresa did not know existed until she found the deposit slips and money spent by Joseph in apparent excess of his salary. The trial court found that Joseph's testimony regarding his income, disposition of personal property, farming operation and financial situation was not credible. There was no abuse of discretion in ordering Joseph to pay maintenance at that level.

■ Joseph's third argument was that the trial court "evidently reversed its own order and terminated [Joseph's] maintenance obligations." Joseph bases his argument on the court's order of September 14, 1994 ordering Joseph to pay Teresa's attorney fees pending appeal. The order read, in pertinent part, "[i]t is therefore, Ordered, Adjudged, and Decreed that Respondent ... pay ... in lieu of additional maintenance the sum of $15,000 as an allowance for attorney fees and that [Teresa] have judgement therefore."

The phrase "in lieu of additional maintenance" is admittedly confusing. Teresa maintains that the order was so worded to prevent Joseph from discharging the debt in bankruptcy. The purpose of this part of the court's order is immaterial because the trial court, even if it were attempting to modify the maintenance obligations, was without jurisdiction to do so. Rule 75.01 provides that the trial court retain control over judgments for 30 days after entry, more if the parties stipulate and withdraw the appeal. The judgment entry awarding maintenance was dated July 19, 1994. The order of September 14, 1994, was outside the thirty-day period. As to maintenance, the original order stands.

## II. Valuation of marital property

■ Joseph appeals the distribution of the marital estate, saying that marital assets were improperly valued, and that several assets were awarded twice as both marital and non-marital property. An appellate court will only interfere when the division of the property is found to be an abuse of discretion. *See Gremaud v. Gremaud*, 860 S.W.2d 354, 356 (Mo.App.1993).

The property at issue will be addressed in the order raised by the briefs.

A. *Motor vehicles* : One 1990 Chevrolet truck was awarded twice to Joseph, once as marital property and once as non-marital property. This was error on the part of the trial court. At trial, Teresa admitted that the truck was Joseph's marital property, and Teresa does not now dispute that the trial court erred. Accordingly, the truck should have been awarded only as Joseph's non-marital property; upon remand, the trial court should award it accordingly.

A 1979 Chevrolet grain truck was awarded as Joseph's marital property. Teresa testified that ½ the truck was Joseph's property before marriage and that the other ½ owner, Joseph's father, relinquished his interest during the marriage.

There is a statutory presumption that all property acquired subsequent to marriage is presumed to be marital. Joseph did not prove that the property was non-marital by clear and convincing evidence. *See Kettler v. Kettler*, 884 S.W.2d 729 (Mo.App.1994). There was no abuse of discretion.

B. *Bank accounts*: The court awarded four bank accounts to Joseph, based upon six deposit tickets from 1993 produced at trial by Teresa. Joseph claims that the evidence was insufficient for the court to assign values to the accounts. "[T]he parties have at least an equal burden to carry on the matter of evidence of value in a dissolution." *Smith v. Smith*, 682 S.W.2d 834, 836 (Mo. App.1984). Joseph did not offer evidence on the point that would render the trial court's judgment an abuse of discretion.

C. *Personal property*: Joseph appeals the trial court's division of "toys and other items belonging to the children," apparently arguing that children's toys *per se* cannot be marital property. The parties stipulated to the values of the children's items on a property appraisal submitted into evidence. No evidence of the sources of the property was offered. The court did not abuse its discretion.

Joseph also complains of the trial court's award of an Electrulux vacuum to him at a value of $600. Joseph fails to notice that the vacuum was awarded twice, the second time at a value of $35. It was erroneous for the court to award the same property twice. The parties are not blameless for the confusion about the Electrulux; their joint stipulations of valuation include contradictory appraisals of the vacuum at $35 and $50. Upon remand, the court is to correct the discrepancies.

D. *Crops*: Joseph alleges error in the court's award to him of money for wheat, corn, and soybeans sold and/or stored, claiming that there was insufficient evidence to support the valuation. Teresa offered receipts of the wheat sales and Joseph's handwritten notations of amounts and prices of the corn and soybeans. Joseph in turn offered his own valuations, which the court was not bound to believe.

In fact, there was ample reason for the court to disbelieve Joseph's testimony about his financial situation and the value of his crops. On cross-examination, when confronted with expenditures that seemed out-of-line with his reported income, Joseph had the following exchange with Teresa's attorney:

Q. Okay. Where did that money come from?

A. Sale of whatever little dab I had from crops and so forth after the flood.

The court did not err by valuing the crops using sales receipts, Teresa's testimony, and Joseph's written estimations.

E. *Livestock and farm equipment*: Joseph argues that the court's award of the various livestock and farm equipment differed in number and value from the joint stipulations of the parties. Joseph is correct; the award and the stipulations vary.

Given the state of the "stipulations," it is not surprising that an error occurred. The stipulations as offered at trial are two typed appraisal lists and two handwritten appraisal lists, plus a financial statement apparently completed by Joseph as part of a loan application. In short, the stipulations are a model of confusion.

The lists themselves are confusing because they offer multiple, contradictory appraisals of the same items—as mentioned above, the parties stipulate in Exhibit 9 that the Electrulux is worth $35, and then in Exhibit 11 stipulate that it is worth $50. Two apprais-

als of the same land are offered, and two appraisals of a 27′ disk and a jungle gym are given. Additionally, it is unclear whether the stipulations were only to *value* or to *quantity* as well. Instead of aiding the trial court, the stipulations here confused the issues and led to error.

Stipulations of fact are controlling and conclusive, and courts are bound to enforce them. *Furniture Forwarders of St. Louis, Inc. v. Chicago, Rock Island, and Pacific R.R.*, 393 F.2d 537 (8th Cir.1968). However, stipulations must be clear as to content and purpose. If parties agree upon an appraised item's *value* and wish to so stipulate, the stipulation should clearly indicate the one agreed-upon value. If the parties are further stipulating to the *quantity* of property, that should be indicated clearly as well. Stipulations save time and streamline the trial process only when the parties put forth the minor effort needed to make them understandable.

The court erred when it awarded items of property at different values than the stipulated ones. Upon remand, the court should correct the discrepancies.

F. *Cash Judgment*: Joseph also contests the $75,000 judgment in favor of Teresa. This court finds no abuse of discretion, but notes that the trial court may wish to adjust the settlement in accordance with the corrected property awards.

### III. Child Support

Joseph contests the amount of child support he is ordered to pay, an amount calculated using Form 14 and an imputed income of $30,000. The trial court imputed the income to Joseph based upon evidence that he earned $23,000 during the first five months of 1994; the court also found Joseph's testimony about his financial situation to not be credible. Joseph points to evidence of expenses and past incomes, evidence which could arguably support a lower income than the one imputed. However, this court looks at the evidence favorable to the judgment and disregards contrary evidence. There was no abuse of discretion.

Joseph also alleges that the court failed to consider Teresa's income-producing potential when it awarded child support. Ac-

cording to testimony at trial, Teresa had never worked outside the home and had no skills, training, or experience. The trial court did not abuse its discretion. Point denied.

### IV. Visitation

Joseph's final point is that the visitation schedule was unduly restrictive, given the award of joint physical and legal custody. Joseph's general allegation cites evidence that could support a less restrictive visitation schedule. However, there was also evidence to support the trial court's judgment. The trial court is given wide latitude in regard to child custody. *See Johnson v. Johnson*, 839 S.W.2d 714 (Mo.App.1992). The point is denied.

Accordingly, the judgment is affirmed in part and reversed and remanded in part to correct the discrepancies identified in this opinion. Costs assessed against Joseph.

All concur.