In re the MARRIAGE OF Donna B.
WARD and John E. Ward.

Donna B. WARD, Petitioner–Respondent,

v.

John E. WARD, Respondent–Appellant.

No. 21134.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 31, 1997.

**18**

John R. Lewis, Lewis & Moon, Springfield, for Appellant.

John S. Pratt & Susan S. Jensen, Pratt & Fossard, Springfield, for Respondent.

GARRISON, Presiding Judge.

John E. Ward ("Husband") appeals from a judgment dissolving his marriage to Donna B. Ward ("Wife"). The issues on this appeal relate to the division of Husband's retirement benefits, and a judgment entered against him in favor of Wife. We affirm in part and reverse in part.

Husband and Wife were married on August 13, 1972, and had two children, Carrie Ward ("Daughter"), born May 21, 1977, and John Ward ("Son"), born January 31, 1979. The couple separated on October 15, 1993, and Wife filed a petition for dissolution of marriage on November 5, 1993. The Family Law Commissioner heard the case on May 27, 1994 and June 1, 1994. Although he entered an interlocutory order dissolving the marriage on May 27, 1994, for reasons not apparent from the record, the Commissioner issued no findings and recommendations until December 11, 1995, and these were then not acted upon by the Family Court Judge. On February 27, 1996, the Commissioner issued amended findings and recommendations which were adopted by the Family Court Judge in a judgment entered March 20, 1996. Husband filed a motion for new trial or to amend the judgment on April 19, 1996. The Family Court Judge subsequently amended the findings and recommendations of the Commissioner and, on July 19, 1996, entered the judgment from which Husband appeals.

Husband entered the United States Army on July 30, 1976, serving on active duty until July 30, 1987, when he was discharged. He reentered military service on March 10, 1989, and served with the National Guard from that date through the time of trial. Husband's military service will entitle him to a military retirement pension when he reaches age sixty if he has by then attained twenty years of military service, with the additional requirement that he must have served at least eight years with the National Guard. Husband had served approximately seventeen years and ten months when the trial court entered an order dissolving the marriage on May 27, 1994. It was necessary, therefore, that he spend additional time in the National Guard before being entitled to a pension upon reaching the requisite age.

Husband would also be entitled to a civil service retirement as a result of his National Guard service if he served at least five years and reached age sixty-two. As of the date of the dissolution, he had attained four years and nine months toward the five years required for that pension to vest.

The trial court found both Husband's military and civil service retirement pensions were marital property, and awarded Wife 50 percent of his military retirement benefits, and 25 percent of his civil service retirement benefits. Both awards relate to benefits under the plans "which may become payable." The court divided the couple's other property between Husband and Wife, and awarded certain personal property to Wife as trustee for Daughter and Son. It also entered a judgment of $4792.97 against Husband and in favor of Wife, in order to "balance the division of marital property."

█ This court will affirm the judgment of the trial court if it is supported by substantial evidence, it is not against the weight of the evidence, it does not erroneously declare the law, and it does not erroneously apply

the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We review the evidence and all permissible inferences therefrom in the light most favorable to the decision of the trial court, and disregard all contrary evidence and inferences. *Sinclair v. Sinclair*, 837 S.W.2d 355, 357 (Mo.App. W.D.1992).

■ Section 452.330 [1] governs the division of marital property. It requires a fair and equitable division of the marital property given the individual circumstances of each case, but it does not dictate an equal division. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 949 (Mo.App. E.D.1993). The statute enumerates several factors that must be considered in the division, but these are not exclusive and the trial court has great flexibility and far-reaching power in dividing the marital property so as to accommodate the needs of the parties. *In re Marriage of Torix*, 863 S.W.2d 935, 938 (Mo.App. S.D.1993). This court will only interfere with a judgment dividing marital property if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of that discretion. *In re Marriage of Spence*, 943 S.W.2d 373, 377 (Mo.App. S.D.1997). We presume the correctness of the division of marital property, and the party challenging the division must overcome that presumption. *Ewing v. Ewing*, 901 S.W.2d 330, 333 (Mo.App. W.D.1995).

On appeal, two of Husband's points relate to the trial court's award of 50 percent of his military retirement and 25 percent of his civil

service retirement to Wife. As we understand the thrust of Husband's argument, he complains that such an award will permit Wife to share in portions of the retirements earned after the dissolution which would constitute non-marital property.

■ In support, Husband argues that the trial court failed to value the two retirements. He points to no evidence in the record which would have permitted the trial court to place a value on the retirement plans. Additionally, Husband did not request that the trial court value the pensions, and the court was not required to do so in the absence of such a request. *In re Marriage of Rippee*, 862 S.W.2d 493, 494 (Mo. App. S.D.1993). Finally, the trial court attempted to award a portion of retirement benefits to Wife if and when Husband retires and begins to receive them. In *Kuchta v. Kuchta*, 636 S.W.2d 663, 666 (Mo. banc 1982), the court said that such an approach divides the risk that the pension will fail to mature, and makes it unnecessary for the court to compute the present value of the pension rights.

■ At the time of the dissolution in the instant case, neither of Husband's retirement plans were vested or matured.[2] Additional service was required of him in order for them to vest, and he had not yet attained the age necessary for them to mature. We hold that it was error to designate the entirety of both pensions, when they are received, as marital property.

1. All statutory references are to RSMo 1994, unless otherwise indicated. Section 452.330 provides, in pertinent part:

1. In a proceeding for dissolution of the marriage ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

. . . .

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property ...

2. "Vested" refers to a pension right which is not subject to forfeiture if the employment terminates before retirement; if "vested" it survives discharge or voluntary termination of the employee. A "matured" right to a pension is distinguished from a "vested" right in that even though vested, a pension right may not mature until the employee reaches a specified age. *See Lynch v. Lynch*, 665 S.W.2d 20, 22, n. 1 (Mo.App. E.D.1983).

■ We first consider Husband's military retirement. It is well-settled in Missouri that military non-disability pensions earned during a marriage are marital property subject to division. *In Re Marriage of Cox,* 724 S.W.2d 279, 280–81 (Mo.App. S.D.1987); *Coates v. Coates,* 650 S.W.2d 307, 312 (Mo. App. S.D.1983); 10 U.S.C. § 1408 (1982). That a person's interest in a pension has not yet vested or matured does not deprive it of its character as marital property. *Hagerman v. Hagerman,* 682 S.W.2d 28, 30 (Mo. App. W.D.1984).

Missouri courts have taken different approaches in determining the marital portion of pensions. In *Kuchta,* the court identified three factual situations in which a dissolution involving a pension plan might occur. 636 S.W.2d at 665. "Stage 1" retirement benefits are "non-vested" and "non-matured;" if employment were terminated, the employee would be entitled to receive nothing presently or in the future except the amount contributed to the plan. *Id.* "Stage 2" retirement benefits are "vested," but "non-matured;" if employment were terminated, the employee would be entitled to receive certain benefits but only after reaching a designated retirement age. *Id.* "Stage 3" retirement benefits are "vested" and "matured;" if employment were terminated, the employee would be entitled to presently receive benefits. *Id.* In discussing possible methods of dividing interests in retirement plans which constitute marital property, the *Kuchta* court acknowledged that one approach would be to establish a certain proportion of the retirement benefits to be paid to the spouse if and when the working spouse retires and begins to receive them. *Id.* at 666.

In discussing the portion of a pension plan which constitutes marital property, the court in *In Re Marriage of Daniele,* 854 S.W.2d 489, 490 (Mo.App. E.D.1993), said that the percentage of contributions made by the spouse to the plan during the marriage represents the percentage which should be characterized as marital property. While conceptually correct, this approach presents an insurmountable task if the amount of benefits to be received at the time of a future retirement are not determinable at the time of the dissolution. In such a circumstance, the trial court would not be able to determine the many variables that could affect the amount of benefits which could ultimately be received, including the length and amount of future contributions or credits which would be calculated in determining the ultimate benefits, with the result that future court involvement could be required.

In *In Re Marriage of Burns,* 903 S.W.2d 648, 651–52 (Mo.App. E.D.1995), the trial court referred to the time when "points" were accumulated toward the husband's military pension in determining the portion which was marital property. This apparently refers to a system in the military by which the amount of the pension is determined. In *Burns,* however, there was no issue about whether this was the correct procedure in determining the marital portion of a military pension. In the instant case, the record contains some incomplete information about Husband's accumulation of points toward his retirement, and neither of the parties contend that such an approach should be followed here.

In *Fairchild v. Fairchild,* 747 S.W.2d 641, 643 (Mo.App. W.D.1988), the pension under consideration was a non-vested, non-matured military pension. The court awarded the wife one-half of the marital portion of that pension which might become payable to the husband in the future. *Id.* It calculated the marital portion as 13/20, based on husband's entitlement to the pension after twenty years of service, thirteen of which had been served during the marriage. *Id.* This formula, however, places unexplained importance on the time the pension vests, and does not consider that the amount of the pension might be altered by the husband's service beyond the twenty year requirement.

*Lynch v. Lynch,* 665 S.W.2d 20 (Mo.App. E.D.1983), utilized a formula which takes that contingency into account. There, the trial court awarded the wife one-half of what it determined to be the marital portion of the pension, when and if it was received. *Id.* at 23. The marital share was calculated by dividing the number of whole years of the marriage by the number of whole years that the husband had been in the service of his

employer, but not to exceed the factor of one. *Id.* The court then determined that the wife was entitled to one-half of the marital share. *Id.* The *Lynch* court's formula is stated thus:

$$\frac{1}{2} \times \textit{husband's monthly benefits when and if received} \times \frac{\textit{years of the parties' marriage}}{\textit{years of the husband's employment with the employer at retirement}}$$

*Id.* There, as here, the husband contended that the formula permitted the wife to share in benefits earned after the dissolution. In *Lynch,* the court corrected that problem by changing the numerator of the formula from "years of the parties' marriage" to "years of husband's employment with the company during the marriage." *Id.* at 24.

As in *Lynch,* Wife would not be sharing in the post-dissolution accumulation of benefits under Husband's military nondisability pension, when and if received, if she were awarded a percentage of such benefits arrived at by the following calculation: the amount of monthly benefits actually received multiplied by a fraction, the numerator of which is the years of Husband's creditable service during the marriage, and the denominator of which is the total years of creditable service at the time of retirement. The resulting amount would constitute the marital portion of the benefits received. It may be expressed by the following equation:

$$\textit{monthly benefits actually received} \times \frac{\textit{years of Husband's creditable service during the marriage}}{\textit{total years of Husband's creditable service at the time of retirement}}$$

Wife would then be awarded the percentage of the marital portion of those benefits found to be proper by the trial court.

With reference to Husband's civil service retirement, at the time of trial he had worked four years, nine months, or 95 percent, of the five years necessary for that pension to vest. All of that time had been accumulated during the marriage. The trial court awarded Wife 5/20 or 25 percent of that retirement. We are unable to discern from the record how the court arrived at the 5/20 fraction, or why the trial court awarded Wife 25 percent of the civil service retirement benefits, but 50 percent of those to be received from the military retirement. The formula discussed above, with reference to the military retirement, would also delineate that portion of this retirement when received, which constitutes marital property subject to division.

By referring to the formula approved in *Lynch,* we do not mean to imply that it is the exclusive method of determining the marital portion of retirement plans which are nonvested and non-matured at the time of a dissolution. It does, however, appear to be a method which meets Husband's valid complaint in this case.

Because the trial court apparently treated both of Husband's retirements as entirely marital property even though they both required additional service before they vested, it is necessary that we reverse that portion of the decree dividing the interest in those benefits. We are unable to determine the percentage of the retirement benefits which the trial court would have considered appropriate had it concluded that less than all of those benefits constituted marital property. The case will, therefore, be remanded to the trial court for a determination concerning the division of the marital shares of Husband's retirement benefits, when and if received, which the trial court deems just after considering all relevant factors including those enumerated in § 452.330.

Husband next contends that the trial court erred in awarding Wife a judgment against him for $4792.97, because it did not assign a value to his pensions or to the property awarded to Wife as trustee for Daughter and Son (the "Schedule G property"). He contends that the court's failure to assign values to these items makes it impossible to determine whether the overall division of property truly is balanced. Consequently, he insists, the distribution is "not supported by substan-

tial evidence and is based upon speculation and conjecture."

■ Other than the pensions and the Schedule G property, all of the marital property distributed in the trial court's decree was assigned a value. Of this, Wife received property with a total net value of $48,745.34, and Husband received property with a total net value of $47,786.48, after considering the debts allocated to each of the parties and the $4792.97 judgment against Husband. Expressed in percentages, Wife received 50.5 percent and Husband received 49.5 percent of this property. As indicated earlier in this opinion, Husband did not request that such assets be valued, and in the absence of such a request, the trial court was not obliged to do so. *Rippee*, 862 S.W.2d at 494.

■ The Schedule G property consists entirely of personal property used by the couple's children. Indeed, every item listed is designated as belonging to one of the children. As trustee, Wife is the legal owner of the property, but the children have equitable ownership.[3] *Farris v. Boyke*, 936 S.W.2d 197, 200 (Mo.App. S.D.1996). Husband does not claim that Wife can or will derive any personal benefit from this property. Nor does he explain why the trial court abused its discretion in awarding the children's personal property to Wife as their trustee, particularly when it also awarded sole legal custody and primary physical custody of them to Wife. He simply asserts that the trial court's failure to make a valuation that he did not request is error. His argument is without merit.

■ Husband next contends that the dissolution decree is contradictory in that it declares the Schedule G property to be marital property, and then awards it to Wife as trustee for the children. We perceive no such contradiction. Our reading of the decree indicates that the court found the property to be marital because it was acquired during the marriage, and then awarded it to Wife for the benefit of the children.

The trial court's intent, as we perceive it, was to approximately equalize the distribution of the marital property. Its entry of the $4792.97 judgment against Husband merely effectuated this intent. The court did not betray this purpose when it awarded the Schedule G property to Wife, as trustee for the children, without assigning a value to it because it apparently did not intend for her to personally benefit from it.

■ Husband's final point relied on is:

"[T]he trial court erred by not dividing military nondisability benefit earned by [Husband] for service in the military by not making its judgment conform to the Uniform Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408."

Contrary to the requirements of Rule 84.04(d), Missouri Rules of Civil Procedure (1997), this point does not state wherein and why the trial court's judgment was allegedly erroneous, and constitutes an abstract statement of law without showing how it is related to any action or ruling of the court. Under such circumstances, nothing is preserved for our review. *Thummel v. King*, 570 S.W.2d 679, 684–85 (Mo. banc 1978). In addition, any issue relating to a division of Husband's retirement benefits is moot because of our decision to reverse and remand as to those matters. This point is, therefore, denied.

We reverse the judgment of the trial court with respect to the division of Husband's military retirement and civil service pensions, and remand the case to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

PREWITT and CROW, JJ., concur.

---

3. The parties do not raise, and we do not decide, any issues regarding the validity of this trust or manner of distribution.