In re the MARRIAGE OF Eric Marlon TURNER and Jessica Lynn Turner.

Eric Marlon Turner, Appellant,

v.

Jessica Lynn Turner, Respondent.

No. 22604.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 19, 1999.

James R. Sharp, Springfield, for appellant.

David G. Neal, Eminence, for respondent.

ROBERT S. BARNEY, Judge.

Eric Marlon Turner ("Appellant") appeals from a dissolution of marriage judgment entered by the Circuit Court of Howell County, Missouri. Appellant raises three points of trial court error. We reverse and remand the cause to the trial court with directions.

Appellant and Jessica Lynn Turner ("Respondent") were married August 18, 1993. The marriage produced one child, Devin Quaid Turner ("Quaid"), born Au-

gust 21, 1994. The trial court awarded Respondent primary physical custody of Quaid and awarded Appellant specified visitation and ordered Appellant to pay child support in the amount of $340.00 per month. However, the trial court made no provision for Quaid's medical care through a health benefit plan. *See* § 454.603.[1]

In Point One, Appellant contends that the trial court erred in awarding the primary custody of Quaid to Respondent. In Point Two, Appellant posits trial court error in not giving him credit for $2,376.00, constituting payments made by him on the parties' mobile home while the couple was separated during a period of eight months. In Point Three, he asseverates that the trial court erred in making no determination as to which party should be responsible for maintaining "the minor child on a policy of health insurance" as required by Section 454.603.

■■■ An appellate court must affirm the trial court's judgment in a dissolution case if it "is supported by substantial evidence, it is not against the weight of the evidence, and it neither erroneously declares nor applies the law." *In re Marriage of Sisk*, 937 S.W.2d 727, 730 (Mo. App.1996); *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the record on appeal, this Court accepts as true the evidence and inferences therefrom that are favorable to the trial court's decree and we disregard all contrary evidence. *See Sisk*, 937 S.W.2d at 730. "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.*

## I.

In his first point on appeal, Appellant claims that he should have been awarded primary custody of Quaid because: a) Respondent has had sexual relations with three men besides Appellant in the two years prior to the trial; b) that Respondent "deprived [Appellant] of contact with

the minor child in January of 1998 despite the fact that [Appellant] was entitled to physical possession of the child at that time"; c) that Appellant was the primary caregiver for the child during the course of the marriage; d) Respondent moved the child at least two times in the eight months between the separation and the trial and testified that she intended to move the child again when she married her fiancé; and, e) that Appellant has a "greater family support system" than Respondent.

■■■ In our review of the foregoing sub-points, we initially observe that "An appellate court will not disturb a trial court's custody award unless it is manifestly erroneous and the welfare of the child requires some disposition other than that made by the trial court." *Sisk*, 937 S.W.2d at 730. "We afford greater deference to the trial court's decision in child custody determinations than in other cases." *Id.* "An appellate court may not substitute its judgment for that of the trial court so long as there is credible evidence upon which the trial court can formulate its belief." *In re Marriage of Patroske*, 888 S.W.2d 374, 384 (Mo.App.1994). When determining custody, the overriding consideration is the "best interests of the child." § 452.375.2. Under section 452.375.2, the trial court is to "consider all relevant factors" including those specifically delineated. *Id.* The appellate court "must presume the trial court awarded custody in the child's best interests, due to the trial court's superior position in judging the credibility of the witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record." *Sisk*, 937 S.W.2d at 730; *see also Patroske*, 888 S.W.2d at 383.

Appellant's first sub-point addresses the fact that Respondent had sexual relations with three men besides Appellant in the two years prior to trial. The trial court found that Respondent's associations with other men during the marriage occurred

---

1. All statutory references are to RSMo Cum. Supp.1997, unless otherwise noted.

only during the times the parties were separated and that Quaid was not adversely affected by them.

■ This court acknowledges that "morals are a pertinent factor to be taken into account in determining whose custody will serve the best interests of the child." *In re Marriage of Berger*, 950 S.W.2d 307, 310 (Mo.App.1997). However, "[e]xtra-marital sexual conduct does not brand a parent an unfit custodian if not accompanied by evidence that the conduct has had or may be expected to have an adverse effect on the child." *In re Marriage of Newberry*, 745 S.W.2d 796, 797 (Mo.App. 1988). "The issue is not condemnation or approval of a moral standard but whether the conduct is detrimental to the child's welfare." *Id.* Here, Respondent testified that Quaid was unaware of her sexual relationships with any of the men. She testified that her relationship with the first of the three men took place during the parties' first separation, that he never spent the night at her house, and she only spent the night at his house on "the weekends [she] didn't have Quaid."

Respondent testified that the second of the relationships in question took place during the parties' second separation and that it was a "friendly relationship." Respondent admitted having sexual relations but testified that she "never spent the night with him" and that they "might have went one [sic] out one night and didn't [come] home." However, "he never stayed at [Respondent's] house, and [she] never stayed at his."

The final extra-marital relationship was with the man Respondent testified that she was going to marry as soon as she was divorced. Respondent stated that Quaid "never knew nothing about" her sexual relations with this man. She testified that on one occasion he and his young son spent the night in Branson in the same room with her and Quaid. However, she testified that she slept in one bed with the boys while he slept in the other and that, if they did have sexual relations on that occa-

sion, "it was when the kids were asleep ..., they weren't aware of it," and that she'd "never done anything like that in front of [her] son."

The only evidence presented that Respondent's actions may have adversely affected Quaid was Appellant's own opinion that Quaid had been adversely affected by seeing these different men with his mother. However, the trial court was not required to believe Appellant's testimony. *Sisk*, 937 S.W.2d at 730.

Considering the foregoing, we find no trial court error in its determination that Quaid "was never exposed to any intimacies between Respondent and any male companion and he has, therefore, not been adversely affected by them." *See Newberry*, 745 S.W.2d at 797. Sub-point denied.

■ In his second subpoint, Appellant claims that Respondent did not allow Appellant to see Quaid during January of 1998. Appellant claims that Respondent's "history of denying [Appellant] meaningful contact with Quaid" should have been given greater consideration in the court's decision. As best this Court can discern, immediately following the parties' final separation, Quaid stayed primarily with Respondent and that Appellant had visitation with him one day (Wednesday) during the week and every other weekend. On January 7, 1998, a Wednesday, Appellant filed his petition for dissolution claiming that Quaid was "presently in the actual custody of [Appellant]." Appellant returned Quaid to Respondent as scheduled. The record shows that the following Wednesday, January 14, 1998, Respondent was served with Appellant's petition. Alarmed by Appellant's pleadings regarding his having custody of Quaid, she refused to allow Appellant to take Quaid on the day as previously planned. She testified that she feared she "[might] not ever see him again." This denial of contact, according to Appellant's own testimony lasted but one week. Further, the time that Appel-

lant missed with Quaid was made up in the following week. Sub-point denied.

■ In his third, fourth and fifth sub-points, Appellant posits trial court error in not finding that he was Quaid's primary caregiver. He also asserts that Quaid's primary placement with Respondent mother will result in further physical movement of the child. He also maintains that Quaid would not have to move as often as he has in the past were he to be placed in Appellant's physical custody. Lastly, Appellant argues that he has "a greater family support system for the child than does [Respondent]," and, therefore, the trial court abused its discretion in awarding primary custody of the minor child to Respondent. We disagree with all of these contentions.

The record shows that the parents' testimonies conflicted as to who was the primary care-giver for Quaid when the parties lived together. The trial court found that Respondent had "been the primary care-giver for the child since his birth and that her involvement with him is more active, intensive, and beneficial than what [Appellant] has provided." There is evidence in the record suggesting that Appellant spent his spare time either napping or watching TV and that his apparent lethargy diminished and limited his interaction with his child. Respondent testified that Appellant would not join Quaid in play; neither did he read books to Quaid. Respondent testified that she had threatened to "throw [the TV] out the front door" because it occupied all of Appellant's time, when he should have been involved with Quaid. On the other hand, Respondent actively participated in her son's life. She took him on trips to the park, read to him on a regular basis and tended to him when he was sick. She also testified that she cooked his meals and purchased all of his clothing. "In reviewing the record on appeal, 'we accept as true the evidence and inferences therefrom that are favorable to the trial court's decree and we disregard all contrary evidence.'" *Sisk*, 937 S.W.2d

at 730. Accordingly, this sub-point is denied.

■ Appellant also complains that while living with Respondent, Quaid has had to move two times, i.e. from the marital home to Respondent's parent's house and back to the marital home, and will have to move again when Respondent remarries. Appellant's sub-point is not convincing. At the time of the hearing, two of the three complained of moves had already occurred. Further, Appellant testified that he had moved once himself—into his parent's home—and that he was planning on moving again, in that he was "planning on building a house." In our review of the record this Court finds no evidence that indicates any more of a propensity on Respondent's part for relocating the principal residence of the child than on Appellant's part. Sub-point denied.

■ Finally, Appellant claims that his living situation is more stable than Respondent's in that "his parents and four of his six siblings live in the small town of Bakersfield, Missouri and that [Appellant] lives a quarter of a mile away from the child's daycare...." While "[t]he interaction and interrelationship of the child with his parents, siblings, and any other person who may significantly affect the child's best interests" is to be considered under section 452.375.2(3), Appellant does not specifically discuss in his argument why Respondent's family is to be considered unstable. Instead, he compares the "stability" of his family situation with the "instability" of Quaid's moves with Respondent, a factor that we have already determined to be unpersuasive.

Considering Appellant's first point in its entirety, we find that "[t]he record in the instant case does not require the conclusion that the trial court's ruling concerning custody was against the logic of the circumstances then before it." *Patroske*, 888 S.W.2d at 384. Neither was it "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of

careful consideration, the benchmark of an abuse of discretion." *Id.* Appellant's first point is denied.

## II.

In his second point on appeal, Appellant posits that the trial court erred, when making its determination concerning the division of marital property, by refusing to give Appellant credit for $2,376.00 in payments made on the parties' mobile home during their eight month separation before the trial. We disagree.

In its judgment, the trial court found that considering the debt against the mobile home it had a negative worth of minus $19,000.00. It determined that "[Respondent] and her family, who are taking over the debt on the marital home, received a direct benefit from [Appellant] who paid down the debt on the mobile home during the separation." Appellant claimed, and the trial court agreed, that he was "entitled to some consideration in the division of the property for the cost of the improvements to the mobile home that were paid for with marital funds." However, the trial court disagreed with Appellant's contention that he deserved a credit of $2,376.00. It found that Respondent had "paid most of the marital bills, including the mobile home payment, during a previous separation" and that the parties' respective contributions were to be considered offsetting.

Respondent testified that during the parties' first four-month separation in the fall of 1996, she paid all the marital expenses except for the "John Deere" payment and the payment for the babysitter. Other than paying for the babysitter, Appellant provided no money for Quaid's support during the first separation.

During the parties' final separation, which lasted eight months, Appellant made the payment on the mobile home but, according to Respondent's testimony, again failed to make any payments for Quaid's support. Respondent testified that the amount she spent during the two separations was at least equal to the amount that Appellant spent.

"The division of marital property is a matter within the sound discretion of the trial court." *In re Marriage of Chorum,* 959 S.W.2d 900, 905 (Mo.App. 1997). It must be remembered that the trial court is not *required* to make an equal division of property, only a fair one. *Hagar v. Hagar,* 722 S.W.2d 358, 360 (Mo. App.1987). "This court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Chorum,* 959 S.W.2d at 905. Even if, *arguendo,* we were to consider it proper to award credit for what each party paid on the mobile home while married but separated; and even if we were to only consider the amount each party paid on the trailer during the two separations, we would be hard pressed to find the division "so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Id.* Here, the trial court's judgment awarded Appellant $4,295.00 worth of property while assigning him no marital debt. The judgment awarded Respondent $6,644.00 worth of property and assigned her $7,620.00 of marital debt. The judgment also ordered Appellant to pay Respondent $2,635.50 as part of the division of property "in order to equalize the division of property." Taking into account Respondent's testimony as to other expenses that she paid during the separations, which testimony the trial court had every right to believe and to which decision we are required to defer, *Sisk,* 937 S.W.2d at 730, we find no error in the trial court's refusal of Appellant's requested $2,376.00 credit. Appellant's second point is denied.

## III.

In his third and final point on appeal, Appellant claims that "[t]he trial court erred in making no provision for which party should be responsible for maintaining the minor child on a policy of

health insurance." Appellant asks that we "remand this case to the trial court for specific findings concerning the issue of which parent should be required to maintain health insurance and how medical expenses not covered by a policy of health insurance are to be allocated between the parties." Respondent concedes that Appellant's third point is well taken.

We note that " § 454.600 [RSMo 1994] *et seq.* requires the trial court to make a finding as to the availability of a [health benefit] plan and assign responsibility to one of the parties to maintain a health benefit plan for the children's insurance coverage." *Pease v. Pease,* 877 S.W.2d 681 (Mo.App.1994). Section 454.603.1 provides, in pertinent part, that "[a]t any state of a proceeding in which the circuit court . . . has jurisdiction to establish or modify an order for child support . . . the court . . . shall determine whether to require a parent to provide medical care for the child through a health benefit plan." § 454.603.1. Further, Section 454.603.2 provides, in pertinent part, that "[w]ith or without the agreement of the parents, the court . . . may require that a child be covered under a health benefit plan. Such a requirement shall be imposed whenever a health benefit plan is available at reasonable cost through a parent's employer. . . ." § 454.603.2. Likewise, "[i]f health benefit plans are available to both parents upon terms which provide comparable benefits and costs, the court . . . shall determine which health benefit plan, if any, shall be required, giving due regard to the possible advantages of each plan." § 454.603.4. Additionally:

5. The court shall require the obligor to be liable for all or a portion of the medical or dental expenses of the minor child that are not covered by the required benefit plan coverage if:

(1) The court finds that the health benefit plan coverage required to be obtained by the obligor or available to the obligee does not pay all the reasonable and nec-

essary medical or dental expenses of the minor child; and

(2) The court finds that the obligor has the financial resources to contribute to the payment of these medical or dental expenses; and

(3) The court finds the obligee has substantially complied with the terms of the health benefit coverage.

§ 454.603.5.

The record reveals that at the time of the hearing Quaid was covered under the health insurance plans of both parent's employers. However, the judgment of the trial court made no determination whether to require either parent to provide medical care for Quaid through a health benefit plan as prescribed by § 454.603.1. Neither did the judgment assign responsibility to either parent for any medical or dental expenses not covered by any health benefit plan as set out in §§ 454.603.4 and 454.603.5. Therefore, the judgment of the trial court must be reversed and the cause remanded to the trial court solely for the determinations required under § 454.600. RSMo 1994; and § 454.603, RSMo Cum. Supp.1997, relative to Quaid's future medical care.

GARRISON, C.J., PREWITT, J., concur.