**Rebecca Ellen FARLEY, Respondent,**

v.

**John Thomas FARLEY, Appellant.**

No. 23376.

Missouri Court of Appeals,
Southern District.

May 11, 2001.

Motion for Rehearing or Transfer Denied
June 6, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Harold G. Johnson, Mitchell D. Johnson, St. Ann, for Appellant.

Douglas R. Kennedy, Poplar Bluff, for Respondent..

BARNEY, Chief Judge.

John Farley ("Husband") appeals the judgment of the Circuit Court of Butler County dissolving his 21 year marriage to Rebecca Farley ("Wife"). In pertinent part, the judgment gave Husband and Wife joint legal and physical custody of their son, Dustin Farley, born April 27, 1988, ("Dusty"). Wife, however, was designated the primary care giver and Husband was ordered to pay the sum of $126.00 a month as child support. In its division of the marital property, the circuit court awarded Wife properties worth $114,092.00 and Husband was awarded properties worth $97,641.00, including $30,000.00 that Wife was ordered to pay Husband. No maintenance was awarded either party.

Husband now raises four points of trial court error challenging the trial court's grant of primary physical custody of Dusty to Wife; the valuation the trial court placed on the parties' personal properties; the division of the marital property; and the denial of his request to amend his pleadings to preserve a claim for "future maintenance."

■ "An appellate court must affirm the trial court's judgment in a dissolution case if it 'is supported by substantial evidence, it is not against the weight of the

evidence, and it neither erroneously declares nor applies the law.' " *In re Marriage of Turner,* 5 S.W.3d 607, 609 (Mo. App.1999) (quoting *In re Marriage of Sisk,* 937 S.W.2d 727, 730 (Mo.App.1996)); *see Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In our review of the record on appeal, we accept as true the evidence and inferences therefrom that are favorable to the trial court's judgment and we disregard all contrary evidence. *Turner,* 5 S.W.3d at 609. "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.*

■ In his first point, Husband claims he should have been awarded primary physical custody of Dusty because the trial court failed to consider the relevant factors listed in section 452.375.2 in making its grant of primary physical custody of Dusty to Wife.[1]

■ "An appellate court will not disturb a trial court's custody award unless it is manifestly erroneous and the welfare of the child requires some disposition other than that made by the trial court." *Id.* "We afford greater deference to the trial court's decision in child custody determinations than in other cases." *Id.* "An appellate court may not substitute its judgment for that of the trial court so long as there is credible evidence upon which the trial court can formulate its belief." *Id.* "When determining custody, the overriding consideration is the best interests of the child." *Turner,* 5 S.W.3d at 609; § 452.375.2. Under the foregoing subsection, the trial court is to "consider all relevant factors" including those specifically delineated. *Turner,* 5 S.W.3d at 609. "The appellate court must presume the trial court awarded custody in the child's best interests, due to the trial court's superior position in judging the credibility of

witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record." *Id.*

■ In determining the best interests of a child, the court may consider the conduct of the parties. *Tracy v. Tracy,* 961 S.W.2d 855, 859 (Mo.App.1998). "Past and present activities may be a reliable guide to the priorities of the parent." *Id.* The record shows prior to separation, while working full time herself, Wife performed all the traditional household duties, including taking care of all of Dusty's physical needs. Wife also attended to all of Dusty's medical needs, including his problems involving attention deficit disorder and chronic sinusitis. On the other hand, there is evidence in the record showing that Husband's interest and participation with Dusty occurred only after the separation of the parties. *See Rinehart v. Rinehart,* 877 S.W.2d 205, 209 (Mo.App.1994); *In Re Marriage of Turner,* 5 S.W.3d at 611. Additionally, the record shows that prior to separation Husband was "very distant from [Dusty]," and reflects that Husband paid little attention to Dusty. Neither did Husband involve himself with the minor's outside activities. *See Turner,* 5 S.W.3d at 611.

■ We also observe that in making its custody determination a trial court must give consideration to the conduct a parent may inspire by example as well as what conduct of a child a parent may foster by condonation. *Tracy,* 961 S.W.2d at 859. In the instant matter, the record reflects that at least on one occasion Husband bragged to his son about how he was able to evade the law while engaging in illegal activities such as stealing. Furthermore, Husband appeared to speak approvingly of certain individuals involved in other illegal activities such as those relating to the ille-

---

1. Statutory references are to RSMo Cum. Supp.1998, unless otherwise set out.

gal burning of a vehicle in such a manner as to avoid detection.

■■■■ In our review of the record, including testimony given during the course of an after trial motion in which Dusty, again, was questioned by the trial court and the attorneys, we observe that Dusty expressed resentment of his mother regarding her remarriage. He also expressed a dislike for her new husband. Indeed, during the course of his second testimony, Dusty requested the trial court to allow him to remain with his father. Dusty also charged that some of his mother's relatives had physically abused him. Despite Dusty's testimony, the trial court granted Wife primary custody over the minor. It is clear that the trial court found Dusty's allegations of abuse less than credible. The trial court is free to believe or disbelieve all, part or none of the testimony of any witness, including that of a child. *Turner,* 5 S.W.3d at 609. Furthermore, while Dusty expressed a preference to remain with his father, we note that a child's preference as to which parent he or she wishes to remain with is but one of the relevant factors that the trial court is required to consider. *In Re Marriage of Bigelow,* 959 S.W.2d 897, 899 (Mo.App.1997). "[T]he child's preference, while important, is not dispositive." *Id.;* § 452.375.2(8). While we acknowledge that Husband's account of his own and Wife's behavior toward the child during their relationship may differ, as previously stated, the trial court was not obliged to believe his testimony or to accept his interpretation of the events. *Bigelow,* 959 S.W.2d at 899. Here, we do not have a firm belief that the decree of the trial court with regard to child custody is wrong. It is supported by substantial evidence and is not against the weight of the evidence. No abuse of discretion has been shown by the trial court in its award of the primary physical custody of the child to Wife. *Id.; Tracy,* 961 S.W.2d at 863. Point denied.

■■■ In his second point, Husband complains of the trial court's valuation placed on the marital property distributed to the parties. He asserts that these values were derived from Wife's Exhibit "C" and were not supported by competent evidence. He alleges that the value of the properties awarded to him were "over stated," whereas the properties awarded Wife were "understated." This point also lacks merit.

■■■■ A trial court is prohibited from entering a valuation of marital property not supported by the evidence at trial, but the trial court, nevertheless, enjoys broad discretion in valuing marital property. *In Re Marriage of Kirkham,* 975 S.W.2d 500, 505 (Mo.App.1998); *Brennan v. Brennan,* 955 S.W.2d 779, 783 (Mo.App.1997). "Although the trial court need no longer assign values to the marital property, evidence from which the value of the marital property can be determined must appear." *Spauldin v. Spauldin,* 945 S.W.2d 665, 669 (Mo.App.1997). As a general rule, "the owner of property is competent to testify as to its value." *Sinopole v. Sinopole,* 871 S.W.2d 46, 49 (Mo.App.1993). In the instant matter, Wife testified at trial, *without objection,* that Exhibit "B" reflected the fair market values of the parties' marital properties as of the date of trial. Wife also testified, without objection, that Exhibit "C" reflected what she felt was a fair and equitable distribution of the properties owned by the parties. Husband offered little or no evidence as to the value of the marital property. At trial, each party has "at least an equal burden to carry on the matter of evidence of value in a dissolution." *Buckner v. Buckner,* 912 S.W.2d 65, 69 (Mo.App.1995). Here, there was no protest to the valuations placed on the property at trial until after the evidentiary

phase of the trial had been concluded. Indeed, there was no cross-examination of Wife as to the values she placed on the respective properties set out in Exhibits "B" and "C." "A complainant should not be rewarded for presenting insufficient evidence of property values." *Smith v. Smith*, 682 S.W.2d 834, 836 (Mo.App.1984). The trial court did not abuse its discretion in valuing the parties' marital property. *Buckner*, 912 S.W.2d at 69. Point denied.

■■■ In his third point, Husband asseverates that the trial court erred in failing to fairly divide the marital property of the parties. He argues that Wife was awarded a far greater portion of the property than she was entitled to in contradiction of the factors set out in section 452.330.1.

■■■ Pursuant to section 452.330.1, the trial court is to divide marital property and debts in such proportions the court deems just after considering all relevant factors therein set out. *See Brown v. Brown*, 14 S.W.3d 704, 706–07 (Mo.App. 2000). The factors listed in section 452.330.1 are not exclusive and the trial court has great flexibility and far-reaching power in dividing the marital property. *In re Marriage of Ward*, 955 S.W.2d 17, 19 (Mo.App.1997). There is no formula respecting the weight to be given by the trial court to the relevant factors set out. *Holt v. Holt*, 976 S.W.2d 25, 28 (Mo.App.1998). This statute requires a fair and equitable division of marital property given the individual circumstances of the case, but does not require an equal division. *Ward*, 955 S.W.2d at 19. On appeal, we presume the correctness of the division of marital property, and the party challenging that division must overcome that presumption. *Ewing v. Ewing*, 901 S.W.2d 330, 333 (Mo. App.1995). We will interfere with a judgment dividing marital property if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *In re Marriage of Spence*, 943 S.W.2d 373, 377 (Mo.App. 1997). "Describing the award in terms of percentage of marital assets is not meaningful unless considered together with the nature and extent of the property to be divided." *May v. May*, 801 S.W.2d 728, 734 (Mo.App.1990). Awarding one party a considerably higher percentage of the marital estate than the other party is not per se an abuse of discretion. *Shook v. Shook*, 997 S.W.2d 103, 109 (Mo.App.1999).

Here, the parties stipulated that all the property of the parties was marital property. The trial court awarded Wife marital assets in the amount of $114,092.00 and Husband marital assets valued at $97,641.00, inclusive of $30,000.00 Wife was ordered to pay Husband. Husband maintains that he contributed a much larger share to the acquisition of the marital property than did Wife because he inherited an unspecified amount of money. He related that he received "close to" $200,000.00 when a truck line he operated out of Troy, Missouri, was sold by the parties in 1984, and that he was paid various sums of money from accounts receivables derived from the sale of his business. He maintains that these monies were used to acquire the parties' home in Butler County.

Husband also sets out that in 1975 he suffered head injuries causing him to be comatose for more than a month. He states that due to this injury he is now subjected to seizures, which require him to take medications. Husband maintains that his medical condition prevents him from earning a decent wage and that the trial court should have, but did not, take into account this limitation in his ability to earn a living in making its division of the parties' marital property.

In our review of the record, we observe that Husband did not testify as to any fixed amount of money which he inherited. Neither did he submit supporting documentation regarding any inheritance received by him. Wife acknowledges that Husband received approximately $1,500.00 as his share of an automobile that his mother had owned and that he received $5,000.00 to $7,000.00 as his share of the sale of a trailer home. She also testified that Husband's brother paid him $27,000.00 from the sale of a home in which Husband had a one-half interest, but it is unclear from the record whether this was inherited money or money earned as a business venture after the marriage. In either event, these sums of money were placed in a joint account with Wife, which in turn was placed into other accounts including a checking account into which Wife also made monthly contributions. "Generally, 'if one spouse has caused his or her separate property to be transferred to both spouses jointly, mere self-serving testimony that it was not intended as a gift is entitled to little weight.' " *Coleberd v. Coleberd,* 933 S.W.2d 863, 870 (Mo.App.1996)(quoting *Clark v. Clark,* 919 S.W.2d 253, 255 (Mo.App.1996)).

As for the trucking business, the record shows that it came into being in 1980 or 1981, after the parties were married in 1978. There is no support in the record that any inherited money by Husband was used in either establishing or operating the business. There is evidence that the joint efforts of both spouses were involved in operating the trucking business. Accordingly, having been acquired some two to three years after the parties' marriage, there is little dispute that the trucking business was marital property. "All property acquired by either spouse subsequent to the marriage, and prior to a decree of legal separation or dissolution is presumed to be marital property regardless of whether title is held individually or jointly." *Id.* at 868. "[A]ll property on which marital funds are expended is marital property regardless of the date of acquisition and status of title." *Marriage of Nored,* 971 S.W.2d 328, 331 (Mo.App.1998).

Additionally, we note that Wife has also worked full time during the marriage, kept up the parties' home, was the primary care-giver for the parties' son, and also assisted in a small used car sales business operated by Husband after the parties moved to Butler County. During the past five to ten years, in particular, Wife has been the primary bread winner for the family, working first as an LPN nurse, and at time of trial as a Registered Nurse at the Veterans Administration Hospital in Poplar Bluff, Missouri. "[T]he trial court is expressly instructed to consider the contributions of both spouses to the marital assets, including contributions made by spouses who are homemakers." *Crews v. Crews,* 949 S.W.2d 659, 665 (Mo. App.1997). Furthermore, tax returns submitted by Husband for his used car business showed very little income during the past seven years—the highest income reported was $7,343.00 in 1994. In "some years" there was a "negative figure."

While Husband maintains that his physical and medical condition preclude his acquiring a well-paying job, he concedes that he can earn minimum wage. Significantly, the record also shows that in the past 18 years Husband has suffered only one seizure and that his malady is controllable by medication. Husband operated his trucking business in Troy, Missouri, for several years *after* he had suffered his head injuries in 1975. Wife also testified that Husband has a real estate license and is an expert mechanic. She further related that Husband lacked ambition and was capable of earning a greater amount than

he did. "The credibility of witnesses is a matter that is within the sound discretion of the trial court, which can either accept or reject all, part or none of the testimony it hears." *Id.* This Court finds no abuse of discretion by the trial court in its award of marital property given the facts of this case. *Shook,* 997 S.W.2d at 109. Point denied.

■ In his last point, Husband maintains that the trial court abused its discretion when, following the close of evidence, the trial court denied Husband's oral motion to amend his pleadings by which he sought "future maintenance." The record shows that, during the course of the presentation of the motion, Husband's attorney stated:

What we're asking for is not for maintenance, but we're asking that the Court not conclude that my client would be forever barred from ever seeking maintenance.

In its judgment the trial court held:

That the [Husband's] request for maintenance is denied. He failed to properly raise the issue in his pleadings and all attempts to inject the issue at trial were met with sufficient objections from [Wife]. At any rate and had the matter been properly preserved, the evidence did not support such an award.

■ The trial court's determination of the amount of maintenance to be awarded, if any, is governed by section 452.335, RSMo 1994. After our review of section 452.335, RSMo 1994, we observe that nowhere in the statute is there a reference to "future" maintenance. Nevertheless, a "court no longer needs to make an award of nominal maintenance in order to retain jurisdiction over the issue, but may retain jurisdiction by expressly indicating in its order that it is doing so." *Graves v. Graves,* 967 S.W.2d 632, 638 n. 1 (Mo.App. 1998); *see Bushhammer v. Bushhammer,*

816 S.W.2d 271, 274 n. 1 (Mo.App.1991); *Givens v.. Givens,* 599 S.W.2d 204, 207 (Mo.App.1980). In order to avoid confusion as to the finality of a judgment, it is preferable that a court simply state that the "court retains jurisdiction on the issue of maintenance." *Graves,* 967 S.W.2d at 639. Secondly, while a court has broad discretion in determining the amount of maintenance to award a spouse in a dissolution action, a "court does not have unbridled discretion to retain jurisdiction over the maintenance issue." *Id.* at 638. Because "[t]he retention of jurisdiction over the issue of maintenance lends itself to the creation of further disputes between the parties and subjects their lives to the uncertainties and unpredictabilities of future events," *Givens,* 599 S.W.2d at 207, a court's retention of jurisdiction on the issue of maintenance becomes "applicable only when the potential for future inability to work is established by evidence exceeding mere guesswork or speculation." *Id.* at 206.

■ Lastly, while trial courts should be liberal in permitting amendments to pleadings, whether a particular amendment should be permitted is primarily within the sound judicial discretion of the trial judge whose action will not be disturbed where there is no showing that such discretion has been palpably and obviously abused. *In re Marriage of Morris,* 726 S.W.2d 505, 508 (Mo.App.1987); *see also Dye v. Div. of Child Support Enforcement,* 811 S.W.2d 355, 358 (Mo. banc 1991).

Here, the request for "future maintenance" came at the conclusion of all the evidence at trial. Husband's attorney gave no indication why he had not sought an amendment earlier in the trial proceedings, nor did he set out the specific reasons why he was seeking "future maintenance." Moreover, the trial court made a finding

that the evidence did not support an award of maintenance. Husband's testimony and evidence relating to his purported malady which prevented him from obtaining gainful employment was unsupported by reliable medical evidence. Under the particular circumstances of this case, the evidence supporting Husband's claim was speculative at most and was refuted by the evidence presented in our discussion of Point Three. *See Givens*, 599 S.W.2d at 207; *Morris*, 726 S.W.2d at 508. Point denied. The trial court did not abuse its discretion in refusing to allow Husband to amend his pleadings requesting future maintenance. *Morris*, 726 S.W.2d at 508.

The judgment is affirmed.

PREWITT, J., concurs.

RAHMEYER, J. concurs in separate opinion.

RAHMEYER, Judge, concurring.

I concur. I write separately to show my dismay at a trial process that puts an eleven-year-old child in the role of deciding what is in his own best interest. First, I note that the trial judge awarded liberal periods of custody to Appellant ("Father"). Father was awarded alternating weekends and every Tuesday and Thursday from 6:00 p.m. to 6:00 p.m. the following day, as well as alternating holidays and four weeks during the summer. Father's basis for his motion for a new trial and this appeal is the testimony from his eleven-year-old son that he wanted to live with his father. The court appointed a guardian ad litem at the request of Father and held a second hearing at his request. As a result, the child was put on the stand a second time. A licensed professional counselor testified that the child loved both parents, but said he wanted to live with Father because Father is "lonely and needs him." The therapist testified that the child "worries that Dad's not happy, and things aren't going well for him." Father modeled poor parenting by showing disrespect for Mother and her new husband; he routinely calls the child's stepfather "midget" and he struck the stepfather in front of the child. I concur that the trial court's judgment is supported by substantial evidence, but I also believe the weight of the evidence would have supported a much less liberal custody plan given the inability of Father to encourage the child to have a meaningful relationship with both parents.